**ARIZONA CIVIL LIBERTIES UNION, et al., Plaintiffs,**

v.

**Cynthia L. DUNHAM, Mayor of the Town of Gilbert, Arizona, et al., Defendants.**

No. Civ 98–2073–PHX–ROS.

United States District Court, D. Arizona.

Sept. 30, 1999.

Timothy Andrew Nelson, Brown & Bain, PA, Phoenix, AZ, for Arizona Civil Liberties Union, plaintiff.

Gary Stuart McCaleb, The American Center for Law & Justice, Scottsdale, AZ, Kevin H. Theriot, Lawrenceville, GA, for Cynthia L. Dunham, Mayor of the Town of Gilbert, Arizona, defendant.

Jay M. Martinez, Martinez & Curtis PC, Phoenix, AZ, for Town of Gilbert, an Arizona municipality, defendant.

## ORDER

SILVER, District Judge.

██ Plaintiffs, the Arizona Civil Liberties Union (AzCLU) and three individuals who are residents of the Town of Gilbert, Arizona, filed a Complaint on November 16, 1998 alleging that Defendants, the Town of Gilbert and Cynthia Dunham, Mayor of Gilbert, violated the Establishment Clause contained in the First Amendment of the United States Constitution,[1] as well as Article 2, Section 12 of the

---

**1.** Plaintiffs alleged separate claims for violation of 42 U.S.C. § 1983 and the Establishment Clause. Section 1983 grants no substantive rights—it establishes a cause of action for violation of rights granted by other provisions, including federal constitutional rights. *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 618, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Given the requirement that complaints be construed

Arizona Constitution, by issuing a proclamation declaring the week of November 23–30, 1997 as "Bible Week in Gilbert, Arizona" and urging fellow citizens to read the Bible. (Amended Compl. at ¶¶ 11–13). Plaintiffs further alleged that Defendants were about to violate the Establishment Clause and the Arizona Constitution again by issuing a Bible Week Proclamation in 1998. On November 16, 1998, this Court granted Plaintiffs' request for a temporary restraining order ("TRO") enjoining the Defendants from officially proclaiming "Bible Week" or any similar observance in 1998. The parties stipulated to an extension of a hearing date on Plaintiffs' Application for a preliminary injunction. Thereafter Plaintiffs withdrew the Application upon Mayor Dunham's representation that she would not issue another Bible Week Proclamation prior to November, 1999.

Because Defendants did not issue a Bible Week Proclamation in 1998 due to the Court's Order, the claims regarding the proposed 1998 Proclamation are moot. In recognition of this change in the action, Plaintiffs filed an Amended Complaint on December 15, 1998 seeking a permanent injunction prohibiting Defendants from both issuing Bible Week proclamations materially similar to the one issued in 1997 and expending public funds to do so. Alternatively they seek a declaratory judgment that all such proclamations are unconstitutional. Plaintiffs also request that Defendants be ordered "to rescind all prior Bible Weeks in Gilbert". In addition, the Amended Complaint contains a request for nominal and compensatory damages.

Pending before the Court are the Town of Gilbert's Motions to Dismiss and the Mayor's Motion to Dismiss and to Strike Portions of Plaintiffs' Complaint. Also pending are the Mayor's Motion to Strike or to Exclude From Consideration Plaintiffs' Materials Outside the Pleadings, and other related Motions.

liberally, the Court will construe Plaintiff's

## Background

At a meeting of the Gilbert Town Council on November 11, 1997, Mayor Dunham issued a Proclamation declaring the week of November 23–30, 1997 to be "Bible Week in Gilbert, Arizona." (Am.Compl. at ¶ 11). The Proclamation, bearing the official seal of the Town of Gilbert, was signed by the Mayor and attested to by the Gilbert Town Clerk. The text of the Proclamation provided as follows:

*TOWN OF GILBERT, ARIZONA*

*·A Community of Excellence*

## PROCLAMATION

WHEREAS, the Bible is the foundational document of the Judeo–Christian principles upon which our nation was conceived; and

WHEREAS, the Bible has been a constant source of moral and spiritual guidance for Americans throughout our history; and

WHEREAS, the Bible has profoundly influenced our nation's art, literature, music, laws and sense of charity; and

WHEREAS, the Bible continues to provide inspiration, hope and comfort for millions of Americans today; and

WHEREAS, for fifty-six years women and men of all faiths have banded together in the Laymen's National Bible Association to sponsor National Bible Week as a time to remind their fellow Americans of the Bible's unique place in American life; and

WHEREAS, this annual emphasis has helped to strengthen spiritual understanding throughout America by

first and third claims as one claim.

encouraging personal reading and study of the Bible.

NOW, THEREFORE, I, Cynthia L. Dunham, Mayor of the Town of Gilbert, Arizona do hereby proclaim:

**NOVEMBER 23 – NOVEMBER 30, 1997**

**as**

**"BIBLE WEEK IN GILBERT, ARIZONA"**

and I urge all my fellow citizens to participate in the observance of BIBLE WEEK by reading the Bible and discovering for themselves its values for personal and community life.

IN WITNESS THEREOF, I HEREBY SET MY
 HAND AND AFFIX THE OFFICIAL SEAL OF
 THE TOWN OF GILBERT, ARIZONA. THIS
 11th DAY OF NOVEMBER, 1997.

 CYNTHIA L. DUNHAM, MAYOR
ATTEST:

Catherine A. Templeton, Town Clerk

(Proclamation, Exh. A to Pls.' Compl.) The Mayor and the Town of Gilbert have issued similar proclamations prior to 1997. (Am.Compl. at ¶ 18). To issue, copy, and distribute the Proclamation, Defendants used public money and property including publicly-funded certificates and stationery, a printer, ink, a computer, and other supplies and equipment. (Am.Compl. at ¶ 16). Additional public expenditures included salaries for the time it took the Mayor to sign the Proclamation and the clerk to attest to it. (*Id.* at ¶¶ 15–16).

In November, 1998 Defendants again placed a Bible Week Proclamation on a Town Council meeting agenda. Due to the issuance of the TRO in the instant action, the proposed 1998 Bible Week Proclamation was not issued; however, Mayor Dunham plans to declare a "Bible Week" again in 1999. (Dunham Dep. at 78, Exh. H. to Surresponse to Levine Aff.) Upon information and belief, Plaintiffs assert that the Bible Week proclamations the Mayor intends to proclaim in the future will differ from the 1997 Proclamation only in that the following sentence will be deleted: "and I urge all my fellow citizens to participate in the observance of BIBLE WEEK by reading the Bible and discovering for themselves its values for personal and community life." (Am.Compl. at ¶¶ 26–27).

**Discussion**

**I. Should Matters Outside the Pleadings be Stricken or Excluded From Consideration in Evaluating the Motions to Dismiss?**

After Defendants filed Motions to Dismiss pursuant to both Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs filed a Response to which nine exhibits are attached. Mayor Dunham subsequently filed a Motion requesting that the Court strike or exclude from consideration several of Plaintiffs' exhibits. The Plaintiffs are correct that, in resolving the issue of standing set forth in Mayor Dunham's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court may consider affidavits and other evidence outside the pleadings. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir.1996) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.), *cert. denied*, 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989)); *Arrington v. Wong*, 19 F.Supp.2d 1151, 1154 (D.Haw.1998). Consideration of such evidence does not convert the Motion to Dismiss into a Motion for Summary Judgment. *Id.* In her Reply, Mayor Dunham concedes that the exhibits can be considered on the issue of standing. Accordingly, Plaintiffs' exhibits B, D, E, and G, all of which pertain to the standing issue, will be considered.

In her Reply to the Motion to Strike or Exclude, Mayor Dunham continues to request that the exhibits listed above, as well as Plaintiff's exhibit I, be excluded from

consideration in resolving the alternative basis on which dismissal is requested—that Plaintiffs have failed to state a claim for violation of either the Establishment Clause or its counterpart in the Arizona Constitution. *See* Fed.R.Civ.P. 12(b)(6). Because the Court has concluded that Plaintiffs lack standing, the Court did not reach the issue of whether the Bible Week Proclamation violated the Establishment Clause. Thus, the Court need not decide whether the exhibits should have been excluded from consideration in addressing that issue. The Motion to Strike or Exclude will be denied.

## II. Does the Court Have Subject Matter Jurisdiction over Plaintiffs' Claims?

■ Article III of the United States Constitution limits federal judicial power to the resolution of "cases" or "controversies". *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). If an action does not present a live case or controversy, this Court lacks jurisdiction over the subject matter of the action. Defendants request dismissal due to lack of subject matter jurisdiction on the grounds that the action is moot and the Plaintiffs lack standing.

■ A motion to dismiss for lack of jurisdiction over the subject matter is brought pursuant to Federal Rule of Civil Procedure 12(b)(1). If a motion under Rule 12(b)(1) challenges a complaint on its face, the Court assumes the allegations in the complaint to be true. *Crisp v. United States*, 966 F.Supp. 973, 974 (E.D.Cal. 1997). Defendants' argument that the action is moot is a facial challenge based solely on the complaint. However, Defendants support their challenge to standing by submitting evidence as they are entitled to do. *See Dreier*, 106 F.3d at 847 (quoting *St. Clair*, 880 F.2d at 201). Because Defendants have submitted evidence on the issue, Plaintiffs have the burden of offering evidence of standing sufficient to establish jurisdiction. *See St. Clair*, 880 F.2d at 201; *Association of Am. Med. Colleges v. United States*, 34 F.Supp.2d 1187, 1190 (C.D.Cal.1998).

### A. Is the Establishment Clause Challenge to the 1997 Bible Week Proclamation Moot?

■ Defendants argue that the Plaintiff's challenge to the constitutionality of the 1997 Bible Week Proclamation is moot because the 1997 Bible Week ended long ago. The Town correctly points out that the proclamation of Bible Week in 1997 can no longer be enjoined because it has already occurred. *See Northwest Resource Info. Center, Inc. v. National Marine Fisheries Serv.*, 56 F.3d 1060, 1069 (9th Cir.1995). However, Plaintiffs have not requested an injunction of the 1997 Bible Week Proclamation. Plaintiffs request injunctive relief because Mayor Dunham plans to issue Proclamations of Bible Week in Gilbert in 1999 and subsequent years, and, on information and believe, they allege that those Proclamations will be materially similar to the one issued in 1997. The duration of Bible Week, even with the additional time spent in advance to issue the proclamation, is too short a time in which to fully litigate the relevant issues and there is a reasonable expectation that Mayor Dunham will declare Bible Week again. Thus, the action falls within the exception to mootness doctrine for claims that are capable of repetition yet evading review. *See id.* at 1070. Plaintiffs also seek nominal damages pursuant to 42 U.S.C. § 1983, a request that likewise is not moot.

■ Defendant Town of Gilbert further argues that Plaintiffs' request for an Order rescinding all prior Bible Weeks in Gilbert is moot. If an action loses its character as a live controversy due to subsequent events, the action must be dismissed as moot. *Doe v. Madison Sch. Dist. No. 321*, ("*Madison Sch. Dist.*"), 177 F.3d 789, 797–98 (9th Cir.1999) (*en banc*). Plaintiffs' request for recission of prior Bible Weeks

did not involve a live controversy at its inception and thus it will be dismissed as nonjusticable. *See id.*

### B. Do Plaintiffs Have Noneconomic Standing to Maintain this Action?

 In order for a case or controversy to exist, a plaintiff must have standing to maintain the action. *Arizonans for Official English*, 520 U.S. at 64, 117 S.Ct. 1055. To establish standing, a plaintiff must "show that he [or she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant ... and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge*, 454 U.S. at 472, 102 S.Ct. 752 (internal citations and quotations omitted).

#### 1. The Injury Requirement

In the leading decision on standing in the Establishment Clause context, the Supreme Court concluded that plaintiffs do not have standing when the only injury identified is the "psychological consequence ... produced by observation of conduct with which [they] disagree[ ]." *Valley Forge*, 454 U.S. at 485, 102 S.Ct. 752. In *Valley Forge*, plaintiffs alleged that a federal agency violated the Establishment Clause by giving a seventy-seven acre tract of land in Pennsylvania to a Christian college. 454 U.S. at 467–69, 102 S.Ct. 752. The plaintiffs were Maryland and Virginia residents who learned of the transfer only through a press release. *Id.* at 486–87, 102 S.Ct. 752. In concluding that the plaintiffs lacked standing, the Court relied in part upon the absence of any connection between the plaintiffs and the property at issue. *See id.* at 486–87, 102 S.Ct. 752. As the Court stated, the Establishment Clause claim did not provide the plaintiffs "a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court." *Id.* at 487, 102 S.Ct. 752.

Although the Supreme Court concluded that plaintiffs must suffer a personal injury from the challenged conduct to establish standing, the Court reaffirmed that the necessary injury need not be economic in nature. *Id.* at 486, 102 S.Ct. 752 (citing *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 686, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)). The Court contrasted one of its earlier Establishment Clause decisions, in which school children and their parents challenged laws requiring Bible reading in the public schools. *See School Dist. of Abington Township, Pennsylvania v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (cited in *Valley Forge*, 454 U.S. at 486 n. 22, 102 S.Ct. 752). The plaintiffs in *Schempp* possessed standing because they "were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them." *Valley Forge*, 454 U.S. at 486 n. 22, 102 S.Ct. 752.

Following the Supreme Court's decision in *Valley Forge*, several circuit courts have noted that the injury necessary to establish standing in Establishment Clause cases has proven an elusive concept. *See Suhre v. Haywood County*, 131 F.3d 1083, 1085 (4th Cir.1997); *Murray v. City of Austin, Texas*, 947 F.2d 147, 151 (5th Cir. 1991), *cert. denied*, 505 U.S. 1219, 112 S.Ct. 3028, 120 L.Ed.2d 899; *Saladin v. City of Milledgeville*, 812 F.2d 687, 692 (11th Cir. 1987). The Ninth Circuit has determined that the injury necessary for standing in the Establishment Clause context exists when the challenged governmental action interferes with a plaintiff's right to freely use a public area or prevents such use entirely. *See Separation of Church and State Committee v. City of Eugene*, 93 F.3d 617, 619 n. 2 (9th Cir.1996); *Kreisner v. City of San Diego*, 1 F.3d 775 (9th Cir.1993), *cert. denied*, 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 657 (1994); *Hewitt v. Joyner*, 940 F.2d 1561, 1564 (9th Cir. 1991), *cert. denied*, 502 U.S. 1073, 112 S.Ct. 969, 117 L.Ed.2d 134 (1992). Interference or prevention of free use occurs when a plaintiff avoids a public area entirely due to the presence of a religious display such

as a cross. *Ellis v. City of La Mesa,* 990 F.2d 1518, 1523 (9th Cir.1993), *cert. denied sub nom. County of San Diego v. Murphy,* 512 U.S. 1220, 114 S.Ct. 2707, 129 L.Ed.2d 834 (1994). Interference also occurs when a plaintiff curtails activities to reduce contact with a city's insignia containing a cross, an insignia displayed on both police vehicles and shoulder patches attached to the uniforms of police officers and fire fighters. *Id.* at 1522–23.

The Ninth Circuit decisions do not contain an extended discussion of the circumstances in which a plaintiff maintaining an Establishment Clause action has sustained sufficient noneconomic injury to establish standing. However, in the context of challenges to government-sponsored religious displays, other circuit courts have found the injury required for standing when a plaintiff establishes that he or she either (1) came into unwelcome direct contact with the display, or (2) actively avoided the display by refraining from use of the public land on which it appears or by altering normal travel routes. *See Suhre,* 131 F.3d at 1086–89 (discussing the two options). The generalized injury articulated by the Ninth Circuit, interference with a plaintiff's right to freely use a public area, is broad enough to encompass both of these two more specific types of injury.

■ In finding injury in either of the two situations set forth above, a number of courts have cited the portion of *Valley Forge* discussing *Schempp,* in which the Supreme Court noted that plaintiffs have standing if they "were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them". *See Suhre,* 131 F.3d at 1086, 1088 (quoting *Valley Forge,* 454 U.S. at 486 n. 22, 102 S.Ct. 752).[2] *See also Doe v. County of Montgomery,* ("County of Montgomery"), 41 F.3d 1156, 1159 (7th Cir.1994) (citing same); *ACLU v. Rabun County Chamber of Commerce, Inc.,* 698 F.2d 1098, 1107 (11th Cir.1983). The former of the two injuries set forth in *Valley Forge* is akin to the injury of unwelcome direct contact with a religious display. *See Suhre,* 131 F.3d at 1086. The injury arises because exposure to a government-sponsored religious activity is necessary to obtain a public benefit such as use of public parks or schools. The latter of the two injuries set forth in *Valley Forge* is akin to the injury of active avoidance of a religious display. *See Hawley v. City of Cleveland,* 773 F.2d 736, 739 (6th Cir.1985) (quoting *Valley Forge* and concluding that plaintiffs who avoid a chapel area in an airport terminal would be " 'assum[ing] special burdens' to avoid 'unwelcome religious exercises' ").

The injury of active avoidance is illustrated by several cases.[3] A retired sergeant major in the United States Army avoided using the clubs and facilities at Camp H.M. Smith, a United States Marine Corp base in Hawaii, though he visited the area approximately four times a year, because the Camp contained a display of a cross sixty-five feet in height. *Jewish War Veterans of the United States v. Unit-*

2. In *Suhre,* the Fourth Circuit also noted that, subsequent to its decision in *Valley Forge,* the Supreme Court addressed the merits of two cases involving challenges to religious displays on public property without finding standing infirm. *Suhre,* 131 F.3d at 1088 (citing *County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter,* 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) and *Lynch v. Donnelly,* 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984)). However, the Supreme Court did not address standing in either of these decisions. The exercise of jurisdiction is not precedent for the existence of jurisdiction. *Madison Sch. Dist.,* 177 F.3d at 795.

3. Some courts have stated that this approach to establishing standing requires evidence that the plaintiff changed his or her behavior in some fashion. *See Foremaster v. City of St. George,* 882 F.2d 1485, 1486 (10th Cir.1989), *cert. denied,* 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990) (citing *Freedom From Religion Foundation v. Zielke,* 845 F.2d 1463 (7th Cir.1988)). However, this Court considers the phrase "active avoidance" a more accurate description of the required behavior because courts have found standing when parties have either (1) changed their existing behavior; or (2) avoided activities in which they otherwise would have been likely to engage. *See Suhre,* 131 F.3d at 1087.

*ed States,* 695 F.Supp. 3, 4, 9 (D.D.C.1988). His avoidance constituted an injury sufficient to create standing. *Id.* at 10. Likewise, active avoidance was the injury in the Ninth Circuit decisions above, in which plaintiffs refrained from use of a park to avoid a display of a cross, and avoided displays of a city insignia containing a cross. *See Ellis,* 990 F.2d at 1522–23. Finally, the injury of active avoidance occurred when plaintiffs altered their normal travel routes to avoid a cross displayed in a municipal park, *see ACLU v. City of St. Charles,* 794 F.2d 265, 267–68 (7th Cir. 1986), and when Georgia plaintiffs who regularly camp in public parks avoided doing so at a Georgia state park in which a cross was displayed. *See Rabun County Chamber of Commerce,* 698 F.2d at 1108.

Numerous decisions also illustrate the injury of unwelcome direct contact with a government's religious display. For example, a plaintiff who regularly litigated in the main courtroom of a county courthouse and attended meetings there had standing to challenge a display of the Ten Commandments in the courtroom. *See Suhre,* 131 F.3d at 1091. Similarly, county residents who had entered a county courthouse to fulfill jury duty obligations and register to vote and who might enter it again for other government matters had standing to challenge a sign over the main entrance stating: "THE WORLD NEEDS GOD." *See County of Montgomery,* 41 F.3d at 1158. Finally, a former student who continued to enter his high school building for sporting events and social functions had standing to challenge a display of a portrait of Christ in the hallway outside the gymnasium. *Washegesic v. Bloomingdale Public Schools,* 33 F.3d 679, 682–83 (6th Cir.1994), *cert. denied,* 514 U.S. 1095, 115 S.Ct. 1822, 131 L.Ed.2d 744 (1995).

Three cases in which plaintiffs challenged municipal seals or logos on Establishment Clause grounds further illustrate the contexts in which injury results from direct contact. One of the three municipal seals or logos contained the word "Christian", a second contained a picture of the local Mormon church, and a third contained a cross. *See Harris v. City of Zion,* 927 F.2d 1401, 1403 (7th Cir.1991); *Foremaster v. City of St. George,* 882 F.2d 1485, 1486 (10th Cir.1989), *cert. denied,* 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990); *Saladin,* 812 F.2d at 687. The plaintiffs in each of the cases had standing because they came into contact with public displays of the seals or logos. The logo containing the Mormon church was displayed on a plaque in the city hall foyer and on municipal vehicles, *see Foremaster,* 882 F.2d at 1486, the seal containing the word "Christian" appeared on municipal stationery and other municipal documents, *see Saladin,* 812 F.2d at 692, and the seal containing the cross appeared on all city-owned vehicles, including police cars, as well as city letterhead, resident's garbage sacks, and vehicle tax stickers. *See Harris,* 927 F.2d at 1403, 1405.

In concluding that unwelcome direct conduct sufficed to establish the injury necessary for standing, the Fourth Circuit distinguished *Valley Forge* on the basis that the plaintiffs in that action, residents of Maryland and Virginia, had no direct contact with or other connection to the subject property in Pennsylvania. *See Suhre,* 131 F.3d at 1087 (citing *Valley Forge,* 454 U.S. at 486–87, 102 S.Ct. 752); *see also Saladin v. City of Milledgeville,* 812 F.2d 687, 692 (11th Cir.1987) (distinguishing *Valley Forge* in similar fashion); *Hawley v. City of Cleveland,* 773 F.2d 736, 739 (6th Cir.1985) (same), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986).

The Court is aware that none of the cases cited above involved a challenge to a proclamation purported to be religious in nature. The circuit court decisions involved challenges to religious displays and the Supreme Court decisions involved challenges to a property transfer, *see Valley Forge,* 454 U.S. at 464, 102 S.Ct. 752, and to Bible reading in the public schools. *See Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (cited in *Valley Forge,*

454 U.S. at 486 n. 22, 102 S.Ct. 752). The personal injury necessary for standing to challenge a proclamation may be different than the injuries found to exist in cases involving religious displays or other types of alleged Establishment Clause violations. Nonetheless, the existing case law provides useful guidance.

Plaintiffs assert that they have suffered actual injury. Ellen and Ellis Sklar, two of the named Plaintiffs, are residents of Gilbert who are Jewish. The Sklars aver that the Bible Week Proclamation offended them and made them feel excluded by the Town in which they reside and by its Mayor "because [they are] not part of the Town's Christian majority". (Ellen Sklar Aff. at ¶ 6, Exh. D to Pls.' Response; Ellis Sklar Aff. at ¶ 4, Exh. E. to Pls.' Response). The Sklars interpreted the Proclamation as sending a message of favoritism toward Christians and bias against non-Christians and found the Proclamation coercive because it encouraged all Gilbert residents to read the Bible. *Id.* For all of these reasons, the Bible Week proclamation caused them mental anguish. *Id.*

William Gregory, the other individual Plaintiff, is a Christian. Mr. Gregory is deeply offended by the Bible Week Proclamation because he believes that the Mayor is attempting to use the Proclamation for political gain. (Gregory Aff. at ¶ 6, Exh. G to Pls.' Response). He finds the Proclamation demeaning because it suggests that "[his] religion and the Bible ... need governmental support". (*Id.* at ¶ 5). He is also deeply offended by the Bible Week Proclamation because "[he] believe[s] that it cheapens holy scriptures" by affording them significance on a par with that of other proclamation subjects such as "Bowling Week" and "National Pet Week." (*Id.* at ¶ 7).

■ It is undisputed that the mental anguish and profound offense that the named Plaintiffs experienced as a result of the 1997 Bible Week Proclamation and the proposed 1998 Proclamation is genuine. Ellen Sklar views the Bible Week Proclamation from the perspective of a Holocaust survivor who spent six years in a concentration camp and lives with the knowledge that sixty members of her extended family were murdered. (Ellen Sklar Aff. at ¶ 4, Exh. D to Pls.' Response). Nonetheless, the Supreme Court has concluded that, no matter how significant, the psychological suffering resulting from knowledge of purportedly unconstitutional conduct does not constitute judicially-cognizable injury for purposes of standing. *Valley Forge,* 454 U.S. at 485, 102 S.Ct. 752. Something more is required—Plaintiffs must show some additional injury resulting from the Bible Week Proclamation. *See id.* at 477, 102 S.Ct. 752.

■ Plaintiff points to one action in which a district court found that a plaintiff had standing to seek both declaratory relief and an injunction to bar the President of the United States from declaring 1983 to be a national "Year of the Bible" in accordance with a Joint Resolution of Congress. *See Gaylor v. Reagan,* 553 F.Supp. 356, 357–60 (W.D.Wis.1982). In concluding that the plaintiff had standing, the district court considered solely the wording of the federal statute, finding it both bold and aggressive. *Id.* at 360. The court stated:

> [A declaration by the president consistent with the Joint Resolution] would constitute a pronouncement by the government of the United States—that truth and virtue lie within the [B]ible and that falseness and evil lie without. The implication is so powerful as hardly to be described as implication, that those who fail or refuse to accept and to apply biblical teaching abide in falseness and evil. To be subjected to such reproach by one's government is to suffer bona fide injury.

*Id.* Although this decision was issued several months after *Valley Forge,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700, the district court did not address the Supreme Court's opinion. Moreover, the district court's analysis appears to conflate the issues of standing with the mer-

its because the court focused on the proposed Proclamation's text rather than whether the plaintiff was the appropriate party to challenge that text. Such an approach is contrary to the principle that standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Valley Forge,* 454 U.S. at 484, 102 S.Ct. 752. When analyzing standing, the essential question is "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 497, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Standing does not normally depend upon the merits of the plaintiff's claim. *Harmsen v. Smith,* 693 F.2d 932, 943 (9th Cir.1982). Because the issues of standing and the merits are conflated, the decision in *Gaylor,* 553 F.Supp. 356, does not aid the Court in resolving the issue of standing.

In their Response to the Defendants' Motion to Dismiss, the individual Plaintiffs further argue that they have standing because they are residents of the Town of Gilbert and the AzCLU argues that it has standing because some of its members reside in Gilbert. According to Plaintiffs, courts deciding the vast majority of recent Establishment Clause actions have found that residents of the local community where the challenged action occurred have standing to challenge the action. (Pls.' Resp. at 21). This statement is only partially accurate, however, because courts have not found residency alone sufficient to confer standing. *See e.g., Suhre,* 131 F.3d at 1090; *Washegesic,* 33 F.3d at 682–83; *Ellis,* 990 F.2d at 1523.

In their Reply to Defendants' Response to the Levine affidavit, Plaintiffs argue that residency alone sufficed to create standing in an action involving a challenge to prayer during a public school's graduation exercises. *See Madison Sch. Dist.,* 177 F.3d 789. As Plaintiffs note, the Ninth Circuit expressly indicated that no dispute existed about whether the student-plaintiff presented an actual case or controversy when the action was filed. *Id.* at

797. The Ninth Circuit provided no further explanation of the standing issue. However, its conclusion that the student had standing is consistent with the Supreme Court's conclusion in *Valley Forge* that the school children in *Schempp* had standing to challenge laws requiring Bible reading in the public schools because they "were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them." *Valley Forge,* 454 U.S. at 486 n. 22, 102 S.Ct. 752 (discussing *Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844). Like the school children in *Schempp,* the plaintiff in *Madison School District* had the choice of either attending graduation and subjecting herself to unwelcome contact with the school prayer, or actively avoiding the prayer by staying away from graduation altogether. The conclusion that direct contact or avoidance constituted the injury in *Madison School District* is confirmed by the Ninth Circuit's decision that, once the plaintiff graduated and no longer faced this choice, her claims became moot. *Madison Sch. Dist.,* 177 F.3d at 798.

To support their argument that residency in the Town is insufficient to confer standing, Defendants rely on a decision of a district court in Florida concluding that a city resident lacked standing to challenge a resolution promulgated by a city council. *See Allen v. Consolidated City of Jacksonville,* 719 F.Supp. 1532, 1536 (M.D.Fla.1989). In the resolution, the city requested that all segments of the community express dedication to the fight against drugs by engaging in "a day of non-denominational voluntary prayer, meditation, personal commitment or other appropriate solemn dedication." *Id.* at 1533. The district court did not directly address the issue of whether residency could give rise to standing; however, the court noted that the plaintiff had not shown that he or his family faced an actual injury such as exposure to specific prayers, the occurrence of prayer at a specific location, city involvement in prayer, or expo-

sure to prayer in public schools. *Id.* at 1536. While the district court's list of injuries that might establish standing is not exhaustive, it is consistent with this Court's conclusion that there is presently no persuasive authority that residency alone is sufficient.

■ Although Plaintiffs' residency in the Town of Gilbert, alone, is not enough, it is nonetheless one factor that, combined with others, contributes to the existence of standing. Residents of the area in which the challenged government conduct occurs cannot be characterized as "roam[ing] the country in search of governmental wrongdoing". *Valley Forge,* 454 U.S. at 487, 102 S.Ct. 752. The likelihood of standing is greater "where there is a personal connection between the plaintiff and the challenged display *in his or her home community*". *Suhre,* 131 F.3d at 1087 (emphasis added). "Plaintiffs who 'are part of the [community where challenged religious symbolism is located] and are directly affronted by the presence of [this symbolism]' certainly " 'have more than an abstract interest in seeing that [the government] observes the Constitution.' " *Id.* (quoting *Saladin,* 812 F.2d at 693) (bracketed provisions appear in *Suhre* ). Moreover, local practices may create a larger psychological wound than the practices of a locale through which a party is merely passing. *Washegesic,* 33 F.3d at 683.

■ In addition to residency in Gilbert, the individual Plaintiffs offer other evidence of injury, some of which pertains to contemplated or actual changes in behavior. Eileen Levine, a member of Plaintiff AzCLU who resides in Gilbert, avers by affidavit that she considered moving upon learning of the Bible Week Proclamation.[4] (Levine Aff. at ¶ 12, attached to Notice of Filing Aff.). Plaintiffs offer Levine's affidavit to establish organizational standing on the part of the AzCLU. Plaintiffs appear to assert that, by contemplating a move, Ms. Levine sustained an injury comparable to those sustained by plaintiffs in the cases cited above who changed their behavior in some manner, such as the plaintiffs who altered their travel routes in *City of St. Charles,* 794 F.2d at 268. However, though Levine contemplated moving, she did not actually do so. In addition, a move may not have reduced the contact Levine had with the Proclamation because she learned of it through newspaper articles.

■ Ellen Sklar avers by affidavit that she attended a Gilbert Town Council meeting to protest the impending Bible Week proclamation in 1998 and further avers that she had not attended a Town Council meeting in Gilbert previously. (Ellen Sklar Aff. at ¶ ; Ellen Sklar Dep. at 28). Plaintiffs may have mentioned that Ellen Sklar did not normally attend Council meetings as additional evidence of a behavior change. However, participation in the political process is fundamental to the success of our democratic society and Plaintiffs have cited no authority for the proposition that it be considered an injury to establish standing.

In analyzing whether a judicially-cognizable injury has occurred, another consequence of the Bible Week Proclamation also requires consideration. According to the Sklars' affidavits, "shortly [ ]after" Ellen Sklar voiced her opposition to the impending 1998 Bible Week Proclamation at a Town Council Meeting in November 1998, the Sklars began to receive harassing mail and harassing phone calls expressing anti-Semitic comments.[5] (Ellen Sklar Aff. at ¶ 7; Ellis Sklar Aff. at ¶ 5; *see also* Ellen Sklar Dep. at 32; Ellis Sklar Dep. at 96). Some of the calls took place in the middle of the night. Ellis Sklar

---

4. The affidavit does not explain when Levine considered moving—upon learning that the 1997 Proclamation had been issued, upon learning that the 1998 Proclamation was pending, or both.

5. Whether the harassing mail and calls occurred before or only after the litigation ensued is not clear from the record before the court. This issue is addressed further *infra.*

testified in his deposition that one caller stated, "You Goddamn Jews, we've had nothing but trouble with you since the beginning of time. You should have all been burned in Hell." (Ellis Sklar Dep. at 56). As a result of the Proclamation combined with the phone calls and letters expressing hatred, Mr. Sklar states, "I feel that ... I'm not welcome as a Jew." (*Id.* at 95).

 Harassing mail and phone calls constitute an actual injury—they are harmful acts directed toward the Plaintiffs personally. The specific example provided by Mr. Sklar is undisputably both offensive and threatening. The injury resulting from being subjected to this harassment is far more significant than the "psychological consequence ... produced by observation of conduct with which [Plaintiffs] disagree[ ]." *Valley Forge*, 454 U.S. at 485, 102 S.Ct. 752. The Court finds that these acts constitute an injury for purposes of standing.

Plaintiffs have provided evidence of one additional incident for the Court's consideration. After the Mayor proclaimed Bible week in 1997, the Sklars were driving through the center of Gilbert along Gilbert Road, a major thoroughfare, when Ellen Sklar saw a banner hanging over Gilbert Road at an intersection with a side street. (Ellen Sklar Dep. at 17). Mrs. Sklar had seen banners in the same location on previous occasions, announcing upcoming Town events such as the Ostrich Festival. (*Id.* at 18). On this occasion, however, the banner proclaimed "Bible Week". Mr. Gregory also saw this banner, but it is unclear whether he saw it in 1997 or 1998. He noticed the banner hanging in the same location across Gilbert Road where he had previously seen banners announcing events relating to Gilbert's heritage as a western town, events such as a rodeo or "Cowboy Week". (Gregory Dep. at 12–13).

 Plaintiffs' unwelcome direct contact with the banner proclaiming · Bible Week also constitutes a sufficient injury for standing purposes—their contact with the banner is similar to the unwelcome direct contact experienced by plaintiffs who came into contact with crosses displayed in parks or on municipal seals painted on city vehicles. *See, e.g. Separation of Church and State Committee*, 93 F.3d at 619 n. 2; *Ellis*, 990 F.2d at 1523.

### 2. The Causation Requirements—Traceability and Redressability

 Although harassing mail and phone calls as well as the banner proclaiming "Bible Week" constitute an injury for purposes of standing, reliance on this evidence raises issues regarding the traceability and redressability requirements for standing, i.e., the requirements "that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge*, 454 U.S. at 472, 102 S.Ct. 752 (internal citations and quotations omitted). With respect to the harassing mail and phone calls, the first issue is whether an injury can result from a chain of events including conduct of actors other than the Defendants.

The Ninth Circuit has concluded that standing is not precluded merely because "the ... injury [is] the result of a chain of events". *Idaho Conserv. League v. Mumma*, 956 F.2d 1508, 1515 (9th Cir.1992) (citing *Wilderness Soc'y v. Griles*, 824 F.2d 4, 12, 18 (D.C.Cir.1987)). In *Idaho Conservation League*, a coalition of six environmental groups challenged a decision by the United States Forest Service to recommend against wilderness designation of 43 roadless areas on the ground that failure to designate the areas as wilderness made development possible. *Id.* at 1512. Seeking dismissal on the basis that the plaintiffs lacked standing, the Forest Service argued in part that any development of the non-designated areas could occur only at a later stage after site-specific decisions by both the Forest Service and third parties. *Id.* at 1515–16. Thus, the purported injury was several steps away from the challenged action. *Id.* at 1515. In rejecting the Forest Service's position, the Ninth Circuit concluded that the failure to desig-

nate the area is wilderness was an important step in the decision-making process, one that made the subsequent decisions possible. *Id.* at 1516.

In the decision upon which the Ninth Circuit relied in *Idaho Conservation League,* 956 F.2d 1508, the D.C. Circuit explained that, when a chain of events separates the alleged injury from the challenged government action, the standing inquiry frequently turns not on the existence of injury, but on the causation issues of traceability and redressability. *Wilderness Soc'y,* 824 F.2d at 11 (citing *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). The Supreme Court confirms that standing is not automatically precluded when injury is indirect and "results from the independent action of some third party," but it is "substantially more difficult" to establish due to the traceability and redressability requirements. *Allen,* 468 U.S. at 757, 104 S.Ct. 3315 (quoting *Warth,* 422 U.S. at 504–505, 95 S.Ct. 2197; *Simon,* 426 U.S. at 42, 96 S.Ct. 1917).

The traceability and redressability requirements defeated claims of standing in each of the Supreme Court decisions cited in the previous paragraph. For example, the plaintiffs in *Allen,* parents of black children attending schools in districts undergoing desegregating, sought to challenge the Internal Revenue Service's failure to adopt adequate standards and procedures to deny tax-exempt status to racially discriminatory private schools. *Allen,* 468 U.S. at 739, 104 S.Ct. 3315. The Court found the injury, the negative impact on the children's ability to be educated in a racially integrated school, to be judicially cognizable. *Id.* at 756, 104 S.Ct. 3315. However, the Court concluded that the "line of causation" between the conduct of the IRS, granting of tax exempt status to racially-discriminatory private schools, and the injury, segregated schools, "[wa]s attenuated at best".

*Id.* at 757, 104 S.Ct. 3315. The Court reasoned that the number of racially-discriminatory private schools receiving tax exemptions was "uncertain". *Id.* at 758, 104 S.Ct. 3315. Moreover, the following links in the chain of causation were "entirely speculative": (1) whether loss of tax-exempt status would cause a private school to change its policies; (2) whether parents of a child attending such a private school would transfer their child to public school if the private school did change its policies; and (3) whether, upon removal of tax-exempt status, a sufficient number of schools and parents would make decisions that collectively would have a significant impact on the desegregation of public schools. *Id.* The Court noted other factors compounding the uncertainty: the third parties who would have needed to change their behavior were numerous and those parties may not have lived in the communities where the plaintiffs resided. *Id.* at 759, 104 S.Ct. 3315.

Unlike the situation in *Allen,* the chain of causation between the 1997 Bible Week Proclamation, the proposed 1998 Proclamation, and the harassing mail and phone calls is not "speculative" or "uncertain". The Mayor and Town issued a Bible Week Proclamation in 1997 and declared their intent to issue a Bible Week Proclamation in 1998, Ellen Sklar protested the impending 1998 Proclamation, and third parties harassed the Sklars via mail and telephone. The injurious acts already have occurred. Nor is the chain of causation "attenuated"—Ellen Sklar's protestation, and potentially the filing of this action, were the only intermediate steps between the Mayor's and the Town's acts and the injurious conduct. Therefore, the injury is traceable to the planned 1998 Proclamation. Redressability is not clear. In the short term, it is likely that the Sklars would receive even more harassing mail and calls if they prevailed in this action. However, in the long term, the harassment is likely to cease permanently once the publicity resulting from the instant action comes to an end.

■ Although standing can be based upon injury resulting from a chain of causally-linked events, reliance on the chain of events in the instant action raises another issue that appears to be one of first impression in standing jurisprudence: whether the chain of causation can include acts of the plaintiffs, and, if so, what acts of plaintiffs can be considered. Plaintiffs do not address or even raise the issue; nor has the Court located any cases addressing it.

When courts have found standing based on injury resulting from a chain of causation, the challenged government action potentially or actually affected a third party whose response would cause injury to the plaintiffs. For example, in *Idaho Conservation League,* the Forest Service's decision not to designate certain areas as wilderness would, following additional acts in the causal chain, result in development of forest land by third parties and thereby injure the plaintiff environmental organizations' members' interests. *Idaho Conservation League,* 956 F.2d at 1515–16. Likewise, though too attenuated for standing purposes, the plaintiffs in *Allen* alleged that the grant of tax-exempt status by the IRS to racially discriminatory private schools caused third parties to send their children to those schools and thereby injured the plaintiffs' interest in racially integrated public schools. *See Allen,* 468 U.S. at 757–59, 104 S.Ct. 3315.

In contrast, the link between the Bible Week Proclamation and the resulting injury of harassing mail and phone calls in the instant action involves the additional step of opposition by Ellen Sklar. Had this additional step of opposition not occurred, the injury of harassing mail and phone calls more than likely would not have resulted. A claim of standing based on an injury resulting, in part, from a plaintiff's own conduct is somewhat troubling because the existence of injury, and thus standing, is then partially within the plaintiff's control.

Resolution of this issue of first impression may depend upon the nature of the intermediate act by the Plaintiffs. The harassing mail and calls may have begun after Ellen Sklar expressed her opposition to the proposed Proclamation at a Town Council meeting, but prior to the filing of the instant litigation. Participation in the political process of one's own community to protest challenged government action is consistent with possession of an interest in the issues strong enough to ensure vigorous advocacy before the Court. While an interest in the issue alone is insufficient, the combination of local residency, interest in the issue, action on the issue, and injury are complementary, not contradictory. Moreover, though one could argue that Ellen Sklar could have remained silent rather than expressing opposition at the Gilbert Town Council meeting, participation in the political process is a fundamental right that should not be discouraged solely because it may constitute one link in a chain resulting in injury. Had the fear of harassment induced Ellen Sklar to avoid the political process, she would have sustained a different injury but one no less serious in nature.

■ For the reasons stated above, an injury resulting from a causal chain consisting of a purportedly illegal government action, a resident's participation in the political process to oppose that action, and harassing mail and phone calls from third parties to the dissenting resident likely would satisfy the standing requirement of Article III. However, the result would be different if the harassing mail and phone calls began after initiation of the lawsuit and in response to it, rather than in response to opposition expressed at a Town Council meeting. The injury necessary to institute an action cannot arise from initiation of the action. Because the plaintiffs have not established that the harassing mail and phone calls occurred *before* this action was initiated, the evidence is insufficient to support the existence of standing.

■ Reliance on the banner to satisfy the injury requirement likewise poses

problems of causation. The causal link between the banner and the Bible Week Proclamation is unclear. Even assuming the City did authorize the banner, an issue in dispute, the record does not indicate whether the City did so as a result of the 1997 Bible Week Proclamation. Without evidence of a chain of causation linking the Proclamation and the banner, the injury resulting from the banner could result in standing to challenge only the Town's display of the banner, not the issuance of the Proclamation. Second, Plaintiffs have not offered evidence that the Mayor and Town would refrain from authorizing the banner even if the Proclamation were proscribed, evidence necessary to establish that the relief requested would redress the injury sustained.[6]

### 3. Conclusion

Plaintiffs' evidence of record offered to establish standing fails to satisfy either the injury requirement or the causation requirements of traceability and foreseeability.

### B. Do Plaintiffs Have Standing as Municipal Taxpayers?

■ Plaintiffs also assert that they have standing to sue as municipal taxpayers in the Town of Gilbert. Plaintiffs have established that they are taxpayers in Gilbert. Each of the named Plaintiffs, as well as Eileen Levine, a member of Plaintiff AzCLU, avers that he or she is a Gilbert resident who regularly purchases goods in Gilbert and pays a 1% privilege or sales

tax to the Town. (Ellen Sklar Aff. at ¶¶ 1, 3; Ellis Sklar Aff. ¶¶ 1, 3; Gregory Aff. at ¶¶ 1, 3; Levine Aff. at ¶¶ 1, 4). To establish municipal taxpayer standing, the Plaintiffs also must show that the Town of Gilbert spends " 'a measurable appropriation or disbursement of [Town] funds occasioned solely by the activities complained of.' " *Madison Sch. Dist.*, 177 F.3d at 794 (quoting *Doremus v. Board of Educ. of Borough of Hawthorne*, 342 U.S. 429, 434, 72 S.Ct. 394, 96 L.Ed. 475 (1952)).

In *Madison School District*, a plaintiff claimed to have standing as a municipal and state taxpayer to maintain an action against a school district that permitted students to deliver prayers during high school graduation programs. 177 F.3d at 797. The plaintiff in *Madison School District* alleged that the defendants spent tax dollars on printing graduation programs, renting a hall, buying decorations, and hiring security guards. *Id.* The plaintiff did not identify any tax dollars that the defendants spent solely on graduation prayers; rather, she conceded that the prayers cost the state no additional expense. *Id.* at 794. The Court concluded that, because the school district would incur the listed expenditures whether or not a student recited a prayer, none of the expenditures were "occasioned solely by" the graduation prayers. *Id.* Therefore, the plaintiff did not have standing as a taxpayer to challenge these expenditures. *Id.* at 797.

In contrast, the Ninth Circuit concluded that taxpayers in the State of Hawaii had standing to challenge a state system de-

---

**6.** The parties also dispute whether the Town authorized the banner. Mayor Dunham admits that a banner is not authorized to hang in the location described by Plaintiffs without the Town's permission. (Dunham Dep. at 79–80, 82, Exh. H to Defs.' Surresponse). The Town owns the poles from which the banner hangs. (*Id.* at 80). Moreover, the banner appeared in the same place where the Plaintiffs previously had seen other banners announcing Town of Gilbert festivals or events, further suggesting that banners appear with the permission of the Town. However, in response to the Mayor's inquiry, assistant town manager George Pettit sent the Mayor a mem-

orandum dated May 10, 1999, stating: "The Town has *never*, in my 14 years of service, permitted or authorized use of the banner for Bible Week." (Dunham Dep. at 79 and Memo attached thereto (emphasis added)). The contents of the memo are hearsay—the statement does not constitute a party admission because it is offered by the Mayor and Town, not against them. Fed.R.Evid. 801(d)(2). However, having determined already that standing cannot be based on the banner without additional evidence of the causal link to the Proclamation, the Court need not decide whether the evidence establishes that the City authorized the banner in 1997.

signed to provide extra benefits to descendants of the islands' original inhabitants. *Hoohuli v. Ariyoshi,* 741 F.2d 1169, 1180–81 (9th Cir.1984). In *Hoohuli,* the taxpayer plaintiffs set forth specific amounts of money spent for this purpose. *Id.* at 1180. In a subsequent decision, the Ninth Circuit also concluded that Hawaii taxpayers had standing to challenge the state's designation of Good Friday as a paid holiday for public employees. *Cammack v. Waihee,* 932 F.2d 765, 772 (9th Cir.1991), *cert. denied,* 505 U.S. 1219, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992). In *Cammack,* the taxpayer plaintiffs identified expenditures of tax revenues to pay public employees' wages on the holiday. *Id.* at 771.

▉ In support of the argument that they have standing as municipal taxpayers, Plaintiffs set forth several expenditures by the Town of Gilbert related to the 1997 and 1998 Bible Week Proclamations. They assert that the Town paid hourly wages to Town employees who worked on the proclamation. The interrogatory responses they cite in support list the following hourly employee activity related to the Bible Week Proclamations: in both 1997 and 1998, the deputy town clerk prepared the proclamation and the town clerk placed the Proclamation on the agenda of the Town Council meeting. (Defs.' Answers to Interrog. Nos. 1–2, Exh. 6 to Pls.' Reply to Defs.' Response to Levine Aff.) In addition, in 1997, the town clerk attested to the Mayor's signature on the Proclamation. (*Id.*) The wages of these hourly employees would have been expended by the City even if they had not spent the nominal amount of time necessary to perform the listed activities. Thus, these are not expenditures "occasioned solely by" the Proclamations. *Madison Sch. Dist.,* 177 F.3d at 794.

▉ The expenses related to making 54 copies of the proposed or actual Proclamations and the constituent letters pertaining to the Proclamations likewise are not "occasioned solely by" the Proclamations. (Defs.' Answers to Interrogatory

No. 4). Plaintiffs assert that, because the Town charges the public 20 cents per page for photocopies, it is reasonable to assume that copies actually cost this amount. (Pls.' Reply at 7). However, the Plaintiffs do not claim that the Town leases its photocopiers and actually expends 20 cents for each copied page. Moreover, the Town utilizes photocopiers to copy material pertaining to a variety of different matters. Thus, the expense of photocopying is not "occasioned solely by" the Bible Week Proclamation. *Madison Sch. Dist.,* 177 F.3d at 794.

▉ Plaintiffs further argue that the Town consumed the following office supplies to issue the 1997 Proclamation and respond to the public's reaction to both the 1997 Proclamation and the proposed 1998 Proclamation: the certificate on which the 1997 Proclamation was printed, the postage incurred to mail the 1997 Bible Week Proclamation, stationery and stamps used to respond to letters from the public pertaining to both the 1997 and proposed 1998 Proclamations, and the stationery utilized for this correspondence. (Dunham Dep. at 11, 122; Defs.' Answers to Interrog. 4). Office supplies of this nature are purchased and consumed by municipalities for a variety of matters; thus, expenditures for such supplies were not "occasioned solely by" the Bible Week Proclamations, at least absent evidence that the expenditures related to the Proclamations increased the total amount otherwise budgeted for such supplies. *See Madison Sch. Dist.,* 177 F.3d at 794.

In addition to the expense for certificates, stamps, and stationery for communications regarding the Bible Week proclamations, the Town expended $1,989 in attorneys fees for legal research and advice regarding the legality of the Proclamations. (Letter from Gary McCaleb to Timothy Nelson, Exh. 10 to Pls.' Reply). It is not clear whether the Town incurred this expense, or the expense of stationery and stamps for correspondence, before or only after the instant litigation ensued.[7]

---

7. Plaintiffs provide as examples copies of

three letters from Mayor Dunham to third

As explained previously, an act occurring in response to litigation cannot itself constitute the injury necessary to institute the action. For all of the reasons set forth, Plaintiffs have failed to establish a municipal expenditure injury.

The expenditures alleged by Plaintiffs to establish taxpayer standing also pose problems with respect to the causation requirements of traceability and redressability. Depending on when the attorney's fees were incurred, the fees may be traceable not to issuance of the Proclamation, but to the preliminary act of considering whether to issue the Proclamation. The same is true of the office supplies. Attorneys' fees expended for preliminary advice on the constitutionality of a proposed Proclamation, as well as the expense for correspondence while the Town was merely contemplating issuance of the Proclamation, would have been incurred regardless of whether the Proclamation was issued. Moreover, the relief Plaintiffs request would not redress expenditures incurred merely to consider whether to issue a Bible Week Proclamation because the Town could continue to incur such expenses in considering whether to issue the Proclamation in a different form.

### C. Conclusion

██ Plaintiff have not established either noneconomic or taxpayer standing. Therefore, the Court will grant the Defendants' Motion to Dismiss and deny the remaining pending motions as moot.[8]

Accordingly,

**IT IS ORDERED** denying the Defendant Mayor's Motion to Strike or Exclude from Consideration. (Dkt.74–1, 74–2).

---

parties regarding one or more Bible Week Proclamations. One is dated December 11, 1997 and two are dated February 1, 1999.

8. The Court is mindful that Plaintiffs' lack of standing in this action places the responsibility for determining whether the Bible Week Proclamation violates the Establishment Clause on political branches of government subject to majority rule even though a fundamental purpose of the Constitution is to safe-

**IT IS FURTHER ORDERED** dismissing as nonjusticable Plaintiff's request for an Order rescinding all prior Bible Weeks in Gilbert.

**IT IS FURTHER ORDERED** granting Defendants' Motions to Dismiss. (Dkt. 27, 28). The action shall be dismissed and judgment entered for the Defendants.

**IT IS FURTHER ORDERED** denying all remaining pending motions as moot.

guard the rights enumerated therein against majority rule. *See* Erwin Chemerinsky, *Interpreting the Constitution 98–99* (1987). However, Plaintiff's lack of standing will not preclude a finding of standing in future actions challenging Bible Week Proclamations by the Mayor and Town of Gilbert. The analysis of standing requires individualized inquiry into the particular evidence before the Court in a given action.