KINGVISION PAY–PER–VIEW LTD.,
a Delaware Corporation,
Plaintiff–Appellant,

v.

LAKE ALICE BAR, also known as Lake
Alice Trading Co.; Sidney E. Gent, also
known as Edward Gent, an individual;
and Debra Rivera, an individual, Defen-
dants–Appellees.

Kingvision Pay–Per–View Ltd.,
a Delaware Corporation,
Plaintiff–Appellant,

v.

Chuy's Playroom, also known as Chuy's
Play Room and The Bikini Room; and
Jesus D. Melendez, an individual, Defen-
dants–Appellees.

Kingvision Pay–Per–View Ltd.,
a Delaware Corporation,
Plaintiff–Appellant,

v.

Paradise Bar, also known as Par–A–Dice;
and Antonio N. Nunez–Ruiz, an indi-
vidual, Defendants–Appellees.

Kingvision Pay–Per–View Ltd.,
a Delaware Corporation,
Plaintiff–Appellant,

v.

Sports Pub, also known as Wheels & Rud-
ders Sports Pub and Wheels & Rudders
Sport's Pub; Terry Labourdette, an indi-
vidual; and Georgia Labourdette, an in-
dividual, Defendants–Appellees.

Nos. 96–56737, 96–56498, 97–
55770 and 97–55798.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1998.

Decided Feb. 9, 1999.

Vincent B. Moneymaker, Los Angeles, California, for the plaintiff-appellant.

Mickey Walker (argued), Robert C. Chandler (briefed), Chandler & Associates, Riverside, California, for defendants-appellees Lake Alice Bar, etc., et al.

Kenneth I. Gross, Los Angeles, California, for defendants-appellees Chuy's Playroom, aka Chuy's Playroom & The Bikini Room, et al.

Shawn R. Perez, San Clemente, California, for defendants-appellees Sports Pub, aka Wheels & Rudders Sports Pub, et al.

Before: CANBY, NOONAN and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

All four of these cases involve claims for damages for broadcasting fights without paying for the right to do so. There are no substantial questions of intellectual property law, though. The issues of substance have to do with relief from default judgments.

### Facts.

These four separate cases arise out of prize fights between Mike Tyson and Peter McNeely, Julio Cesar Chavez and Pernell "Sweetpea" Whittaker, and others. Don King, Inc. owned the rights to show the fights on the nights they occurred, on pay-per-view television, and licensed them to Kingvision Pay–Per–View, Ltd. The rights included not only the fight, but the preliminaries. Preliminaries are generally fights between prizefighters less likely to attract audiences who will pay top dollar to watch the featured fight.

### I. Sports Pub.

Kingvision caused investigators to go to bars on fight nights, to see if they were showing the fights without paying for licens-

ing fees. One of the investigators went into Sports Pub for about two minutes, used the bathroom, and saw that the preliminaries were being shown on two big television sets. He knew it was a preliminary for the Tyson fight because he saw "Kingvision Round 3" and a Corona beer advertisement on the ring mat on the screen.

■ The district judge made a finding of fact at the conclusion of the trial that the bar had inadvertently shown some portion of the preliminaries. The judge was not satisfied that the evidence proved that the main bout had been shown. Based on his view that the main fight had to be shown for Kingvision's rights to be violated, he granted judgment in favor of the bar. Kingvision appeals.

Plainly the district court erred in reaching its final conclusion on liability. The bar argues that we review findings of fact only for clear error, and that the district court findings were not clearly erroneous. That is true but beside the point.

The critical finding of fact is that the bar indeed did show a preliminary. All the other elements were admitted (arguably this one was too). As for the district court's determination that the Tyson fight had to be shown to entitle Kingvision to prevail, and not merely a preliminary, that was not a finding of fact, regardless of how the district court labelled it. It was a legal determination. The district judge said the "event" requiring licensing was only the Tyson bout, but the joint pretrial order, agreed to by the parties and signed by the judge, defined the event as "including undercard and preliminary bouts." The district judge said that the complaint did not make any claim regarding the preliminaries, but that is simply mistaken. The complaint says "including undercard and preliminary bouts," just like the joint pretrial order. Kingvision's lawyer kept trying to tell the judge all this, but the judge would not let him. The judge said "Nonsense. The event was Tyson."

■ The district court also concluded that "even if there was a violation there has been no showing of damages." That determination was mistaken as a matter of law. Both statutes[1] provide for statutory damages in the absence of any proof of actual damages. The district court ruled that Kingvision had waived statutory damages by putting on proof regarding actual damages, arguably $857.50 (fire marshal seating capacity of 49 multiplied by $17.50 per head licensing fee). But the complaint and pretrial order clearly state that Kingvision claims statutory damages. Kingvision made it quite clear that its proof was intended to help the judge decide whether the violation was willful, and where within the broad range of statutory damages to make the award.

The bar argues that the district judge made a number of remarks suggesting that Kingvision's investigator did not look carefully enough to know what he was seeing, had not kept good enough records to be relied upon, was not good at his job, and went to too many bars in a short time to be worthy of belief. The district judge made many remarks suggesting his low regard for Kingvision's investigators, its lawyers, and its claims. But in his findings of fact he found (as the evidence and admissions probably compelled him to find) that the bar had shown a preliminary bout. And that is the only finding that matters. It compels judgment in favor of Kingvision. We remand for entry of judgment in an appropriate amount.

## II. Lake Alice Bar.

Lake Alice Bar defaulted. Kingvision obtained a default judgment for $80,400, and got a receiver appointed to take over the bar. Only after a receiver was appointed did the bar do anything about the lawsuit. Its owners moved to vacate the default and default judgment on the ground that they had never been served. The process server had filed an affidavit saying that he had served personally one of the two partners who owned the bar. The other owner was served by substituted service and mail. The bar own-

---

1. Two statutes are pleaded, 47 U.S.C. § 553, and 47 U.S.C. § 605. There are potentially intricate issues of overlap and distinction between these statutes, one of which speaks more to cable tele-

vision, the other more to satellite television. Neither side has raised any question about which statute applies in the briefs, so we have no occasion to decide which applies, or whether both do.

ers filed affidavits saying they had not been served. The district judge held an evidentiary hearing at which the process server and one of the bar owners testified. The judge made an express finding that he believed the process server, and denied the motion to vacate the default.

The bar's lawyer asked the judge to give the majority owner some sort of relief, and the judge said "Well, the only thing I will consider is if you want to make a motion right now to amend the default judgment to cut down some of the dollar signs. I will consider that." The bar's lawyer so moved, and argued that the bar had spent a lot of money promoting a rock band that night, and would not have brought noisy bands in if it had been trying to draw customers with the fight. Kingvision's lawyer responded, arguing that there had been repeated willful violations. The district judge then said of the judgment, "I signed it inadvertently," and cut it to $4,000 ($1,500 damages plus $2,500 attorneys' fees).

■ Kingvision argues that the district court lacked jurisdiction to amend its judgment more than ten days after entry, because that is the time limit under Federal Rule of Civil Procedure 59. The argument is mistaken, because Federal Rule of Civil Procedure 60(b)(1) expressly provides for relief from a judgment on motion made within a year after entry, based on mistake or inadvertence. We have rejected the argument that a district court may correct its own error of law only under Rule 59, and held that it may vacate a mistaken money award under Rule 60(b). *Liberty Mutual Ins. Co. v. Equal Employment Opportunity Comm.,* 691 F.2d 438, 441 (9th Cir.1982).

Kingvision argues that there was no mistake or inadvertence by Lake Alice Bar's owners that would justify relief from the $80,400 judgment. In that they are correct. The proof established that they had been served, ignored the summons and complaint despite weekly chats with their lawyer about other matters during the period for answer, and filed false affidavits that they had not been served.

But Rule 60(b)(1) is not limited to mistake or inadvertence by the judgment debtor.

Because the words "mistake" and "inadvertence" are not so limited, they may include mistake and inadvertence by the judge. We held that a district court can correct its own mistake months after judgment, under Rule 60(b), in *Gila River Ranch, Inc. v. United States,* 368 F.2d 354, 357 (9th Cir.1966); *see also* Restatement of Judgments 2d § 68, illustration 5 (1982). Likewise here the district court was correcting its own mistake or inadvertence.

■ Kingvision also argues that because the motion was oral and there was no evidence to support it, the court abused its discretion in granting the reduction, even if it had jurisdiction to do so. We review the district court's decision on a Rule 60(b) motion for abuse of discretion. *See United States v. Alpine Land & Reservoir,* 984 F.2d 1047 (9th Cir.1993). The court was within its discretion in proceeding on an oral motion. Rule 60(b) says "on motion," without specifying whether the motion need be written or may be oral. Rule 7(b)(1) says that a motion must be made in writing "unless made during a hearing or trial." Because the oral motion by the bar owners was made during a hearing, it was permissible under Rule 7(b).

■ There was evidence upon which the court could exercise its discretion to reduce the judgment. Kingvision's affidavit submitted with its application for default judgment established that, depending on Lake Alice Bar's seating capacity, it would have had to pay somewhere between $3,000 and $6,000 to buy the rights to show the fights on the nights at issue. That furnished the district court with a basis from which it might conclude that $80,400 was far too high. Also, these amounts are not mere abstractions. Depending on the circumstances, a low five figure judgment may be a stiff fine that deters, while a high five figure judgment puts a bar out of business. The range in the statutory award might allow for a sanction that deters but does not destroy.

■ Kingvision also argues that it did not have notice and an opportunity to prepare for and properly oppose the motion. The judge said orally, at the hearing at which counsel

for both sides were present, that he was going to consider reducing the amount. That was at least some notice. And he did hear some argument from Kingvision on why the amount should not be cut. But he refused to hear very much, repeatedly interrupting argument with such remarks as "Why do you keep arguing with me?" "Don't press me," and when asked if counsel could be heard, "No, we are going to get through." These remarks might be appropriate if counsel were wasting time or abusing the process, but as we read the record, counsel was trying in a proper, respectful and reasonable way to be heard on the amount, and did not get a fair chance to make his argument. We therefore remand to allow a fair opportunity to both sides to be heard on the amount.

## III. Chuy's Playroom.

Chuy's Playroom also defaulted, and moved to set aside the default and vacate the default judgment. The district court held a hearing to decide who was telling the truth, the process server who swore he had served the summons and complaint, or the bar owner who swore that he had not been served. The process server testified that he remembered the visit, because the bar had dancers in bikinis and charged eight dollars for a beer. The district judge concluded that the process server was telling the truth, so the default stood.

In its written motion to set aside the default, the bar asked for a reduction in the amount if the court denied its motion to vacate the default judgment altogether. Kingvision filed written opposition and asked orally at the hearing that the judgment not be reduced below $15,000. The judge reduced it to $9,000.

The only argument Kingvision makes in its challenge to the Chuy's Playroom reduction is that the district court lacked jurisdiction under Rule 59(b) to reduce the judgment, because five months had elapsed since it was entered. We reject this argument for the reasons explained above, and affirm.

## IV. Paradise Bar.

Paradise Bar has never contested anything, and never shown up in district court or here. Kingvision got a $27,100 default judgment against it and appointment of a receiver. The district judge *sua sponte* reduced the award to $9,000. So far as we can tell from the record in this case, there was no hearing, no argument, no notice, nothing to Kingvision but an order, out of the blue, reducing its judgment. Kingvision appeals the reduction.

Kingvision argues that the district court lacked jurisdiction because more than the ten day period allowed under Rule 59(b) had elapsed. We reject this argument for the reasons explained above.

■ In this case, unlike *Lake Alice Bar* and *Chuy's Playroom*, the judgment debtor never made any motion, written or oral. That raises the question whether the district court can modify the amount of a default judgment *sua sponte*. We conclude that it can.

Rule 60(b) says that a judge may vacate a judgment "on motion." It does not say whether the motion must be by a party or can be *sua sponte*. We noted a conflict among other circuits on that question in *Clifton v. Attorney General*, 997 F.2d 660, 664 (9th Cir.1993), and did not resolve the question. The Sixth Circuit says *sua sponte* correction under Rule 60(b) is barred because the rule "explicitly requires a motion from the affected party." *Eaton v. Jamrog*, 984 F.2d 760, 762 (6th Cir.1993). But the rule just says "on motion," and does not explicitly say "by a party." The Tenth Circuit notes that 60(b), unlike 60(a), does not say "by the court ... of its own initiative." *Dow v. Baird*, 389 F.2d 882, 884 (10th Cir.1968). But 60(a) also says, unlike 60(b), "on the motion of any party" as opposed to the unqualified 60(b) language "on motion." The inferences from phrasing of the rules seem somewhat indeterminate.

The Fourth Circuit, on the other hand, has construed Rule 60(b) as not "depriving the court of the power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion." *United States v. Jacobs*, 298 F.2d 469, 472 (4th Cir.1961). Likewise the Fifth Circuit has

held that a district judge can vacate a judgment under Rule 60(b) where "after mature judgment and re-reading the record he was apprehensive that he had made a mistake," and that "[t]he court could initiate this on its own motion." *McDowell v. Celebrezze,* 310 F.2d 43 (5th Cir.1962).

The words of the rule allow for either construction, and we conclude that the Fourth and Fifth Circuit position makes better practical sense. The traditional definition of *sua sponte* is that the court acts of "its own will or *motion.*" Black's Law Dictionary 1424 (6th ed.1990) (emphasis added), so the words "on motion" in Rule 60(b) do not plainly exclude *sua sponte* repairs of mistakes and inadvertence. Court clerks commonly put default judgment papers in the piles a judge may sign with only cursory perusal, because nothing is contested. Plaintiffs' attorneys may also have given the papers only cursory perusal, because collection work is often done on a volume basis with considerable reliance on clerical and paralegal staff. Mistakes can easily slip in, and work great injustice. A creditor has no substantial reliance interest, in the ordinary case, on an uncollected default judgment. Rule 1 says that the rules are to be construed to secure the "just" determination of every action. Justice is better served by letting a judge repair mistakes in default judgments more than ten days old, in the fortunate circumstances where the judge happens to notice them.

But that is not the end of the case. There is a problem because the correction came out of the blue, with no notice to Kingvision or opportunity to be heard on the reduction. A judgment is property, so taking it away requires due process of law. *Cf. In re Consolidated United States Atmospheric Testing Litigation,* 820 F.2d 982, 989 (9th Cir.1987) (a cause of action not yet reduced to judgment is a species of property protected by the Fifth Amendment Due Process Clause). Due process generally requires notice and an opportunity to be heard before a governmental deprivation of a property interest. *Tom Growney Equip. v. Shelley Irr. Development,* 834 F.2d 833, 835 (9th Cir.1987).

Kingvision was deprived of its property interest in its judgment against Paradise Bar without notice or opportunity to be heard. Vacating the default judgment in this manner therefore deprived Kingvision of due process of law. We therefore vacate the amended judgment, and remand so that Kingvision may have appropriate notice and opportunity to be heard regarding such reduction of the default judgment as the district court may deem appropriate on account of inadvertence or mistake.

### Conclusion.

In *Sports Pub,* we REVERSE and REMAND for entry of judgment in favor of Kingvision in an appropriate amount. In *Lake Alice,* we VACATE the amended judgment and REMAND so that both sides may be heard on the appropriate amount of any reduction in the judgment.

In *Chuy's Playroom,* we AFFIRM. In *Paradise Bar,* we VACATE the amended judgment and REMAND so that Kingvision may be heard on the extent of any reduction in the judgment.

Costs are awarded in favor of Kingvision in *Sports Pub, Lake Alice Bar,* and *Paradise Bar.* No costs are awarded to either side in *Chuy's Playroom.*

The cases shall be assigned to a different district judge on remand.