ARIZONA CIVIL LIBERTIES
UNION, et al., Plaintiffs,

v.

Cynthia L. DUNHAM, Mayor of the
Town of Gilbert, Arizona, et
al., Defendants.

No. CIV 98–2073–PHX–ROS.

United States District Court,
D. Arizona.

Aug. 28, 2000.

Timothy Andrew Nelson, Brown & Bain PA, Phoenix, AZ, for Arizona Civil Liberties Union, Ellis Sklar, Ellen Sklar, William Gregory.

Gary Stuart McCaleb, Scottsdale, AZ, Kevin H. Theriot, Lawrenceville, GA, for Cynthia Dunham.

Jay M Martinez, Martinez & Curtis PC, Phoenix, AZ, for Town of Gilbert.

### ORDER

SILVER, District Judge.

By order issued September 30, 1999, the Court granted Motions to Dismiss filed by the Defendants, the Town of Gilbert, Arizona, and the Town's Mayor, Cynthia Dunham, on the ground that the Plaintiffs, the Arizona Civil Liberties Union (AzCLU) and three individual residents of the Town of Gilbert, had not established standing to maintain the action. *See Arizona Civil Liberties Union v. Dunham,* ("*AzCLU*"), 88 F.Supp.2d 1066 (D.Ariz.1999). Plaintiffs had alleged that Defendants violated the Establishment Clause by issuing a Proclamation declaring the week of November 23–30, 1997 as "Bible Week in Gilbert, Arizona" and urging fellow citizens to read the Bible. (Amended Compl. at ¶¶ 11–13). Pending before the Court is Plaintiffs' Motion requesting new trial, amendment of judgment, or reconsideration ("Motion for Reconsideration").

### Legal Standard

■ The Court has discretion to reconsider its order granting final judgment. *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc., of Arizona,* 84 F.3d 1186, 1192 (9th Cir.1996); *School Dist. No. 1J. Multnomah County v. ACandS, Inc.,* ("*Multnomah County*"), 5 F.3d 1255, 1262 (9th Cir.1993), *cert. denied,* 512 U.S. 1236, 114 S.Ct. 2742, 129 L.Ed.2d 861 (1994). Reconsideration is warranted to consider newly discovered evidence or an intervening change in controlling law, as well as to correct clear error. *Multnomah County,* 5 F.3d at 1263. Other highly unusual circumstances also may warrant reconsideration. *Id.; see also 389 Orange Street Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir.1999). In addition, a judgment may be vacated

upon a showing of "(1) mistake, inadvertence, surprise, or excusable neglect" or "(6) any other reason justifying relief." Fed.R.Civ.P. 60(b). Plaintiffs must show "extraordinary circumstances" to obtain relief under Rule 60(b)(6). *Id.* (quotation omitted); *Multnomah County,* 5 F.3d at 1263.

## Discussion

### I. Is Reconsideration Warranted?

In the course of addressing Plaintiffs' arguments, the Court again examined all of the pleadings having any bearing on Defendants' motions to dismiss, as well as the Court's prior order. In the prior order, the Court correctly determined that residency, though insufficient to confer standing alone, contributes to the existence of standing. *AzCLU,* 88 F.Supp.2d at 1077. As the Court noted: "[L]ocal practices may create a larger psychological wound than the practices of a locale through which a party is merely passing." *Id.* (citing *Washegesic v. Bloomingdale Public Schools,* 33 F.3d 679, 683 (6th Cir. 1994), *cert. denied,* 514 U.S. 1095, 115 S.Ct. 1822, 131 L.Ed.2d 744 (1995)). However, the Court did not consider whether the psychological injuries of Plaintiffs, all of whom are Gilbert residents, differed from those experienced by the plaintiffs in *Valley Forge Christian College v. Americans United for Separation of Church and State,* ("*Valley Forge*"), 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), who were Maryland and Virginia residents challenging a federal agency's transfer of land to a Christian college in Pennsylvania. Rather, the Court considered the very real psychological injuries the Plaintiffs suffered as a result of the Bible Week Proclamation to be the same as those of the *Valley Forge* plaintiffs: the " 'psychological consequence ... produced by observation of conduct with which [they] disagree[ ].' " *See AzCLU,* 88 F.Supp.2d at 1072 (quoting *Valley Forge,* 454 U.S. at 485, 102 S.Ct. 752). The Supreme Court found such injury insufficient for standing purposes. *See*

*id.* (quoting *Valley Forge,* 454 U.S. at 485, 102 S.Ct. 752).

"A district judge can vacate a judgment under Rule 60(b) 'after mature judgment and re-reading the records' and 'on its own motion.' " *Kingvision Pay–Per–View Ltd. v. Lake Alice Bar,* 168 F.3d 347, 351–52 (9th Cir.1999) (internal quotation omitted); *see also Fiduccia v. U.S. Dept. of Justice,* 185 F.3d 1035, 1046 (9th Cir.1999). Because residency or other proximity to challenged conduct affects the injury portion of standing analysis, this Court must determine whether Plaintiffs' residency in Gilbert, and their resultant proximity to the Bible Week Proclamation, impacts the analysis of injury in the action at bar. Thus, "after mature judgment and re-reading the records," *Kingvision Pay–Per– View Ltd.,* 168 F.3d at 351–52, the Court concludes that reconsideration of its analysis of standing is warranted.

Reconsideration is merited even though this Court engaged in a careful analysis of Plaintiffs' standing in its prior order due to both the significance and the difficulty of the issue. In analyzing standing, the Court was mindful that standing and other Article III doctrines are a limitation on judicial power. *See Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). These doctrines "limit the federal judicial power 'to those disputes which confine federal courts to a role consistent with a system of separated powers.' " *Valley Forge,* 454 U.S. at 472, 102 S.Ct. 752. Nonetheless, the Court also has an obligation to consider the disputes of parties who establish the standing requirements of injury, causation, and redressability. *See id.* at 472, 102 S.Ct. 752.

The Supreme Court has acknowledged the difficulties inherent in the analysis of standing: " 'We need not mince words when we say that the concept of 'Art. III standing' has not been defined with complete consistency in all of the various cases decided by this Court which have discussed it.' " *Valley Forge,* 454 U.S. at 471, 102 S.Ct. 752. "[Both the constitutional

and prudential components] of standing doctrine incorporate[ ] concepts concededly not susceptible of precise definition." *Allen*, 468 U.S. at 751, 104 S.Ct. 3315. As noted in this Court's prior order, several circuit courts also have noted that the injury necessary to establish standing in Establishment Clause cases is a difficult and elusive concept. *See Suhre v. Haywood County*, 131 F.3d 1083, 1085 (4th Cir.1997); *Murray v. City of Austin, Texas*, 947 F.2d 147, 151 (5th Cir.1991), *cert. denied*, 505 U.S. 1219, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992); *Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987). The concept is even more elusive in the action at bar because it involves issues of first impression. Reconsideration enables this Court to further its ultimate aim of applying the law in this difficult area in a manner consistent with the dictates of the Supreme Court and the Ninth Circuit.

## II. Do Plaintiffs Have Standing?

In *Valley Forge*, the Supreme Court expressly articulated the importance of direct contact with challenged government conduct, for standing purposes, by distinguishing its prior decision, *School Dist. of Abington Township, Penn. v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). Unlike the remotely-located plaintiffs challenging the sale of government property in *Valley Forge*, the plaintiffs in *Schempp* had standing to challenge the constitutionality of a daily school prayer because they were either *"subjected to unwelcome religious exercises"* or "forced to assume special burdens to avoid them." *Valley Forge*, 454 U.S. at 486 n. 22, 102 S.Ct. 752 (discussing *Schempp*, 374 U.S. 203, 83 S.Ct. 1560) (emphasis added).

In their Response to the Motion to Dismiss, Plaintiffs quote the Supreme Court's explanation of the harm suffered by individuals when their government endorses a particular religion: " 'it sends a message to nonadherents that they are outsiders, not full members of the political community....' " (Pls.' Resp. at 21 (quoting *County of Allegheny v. A.C.L.U.*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472, (1989) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 688, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (O'Connor concurring)))). The Supreme Court did not set forth this discussion of harm to resolve issues of standing. Nonetheless, the Supreme Court's description is consistent with the conclusion that harm may differ based on proximity. The harm that occurs when public officials send a message to residents of the community about their outsider status is far greater than the harm that occurs when someone residing elsewhere hears of the message. The message of outsider status directly affects local residents but affects others only on an ideological basis.

In one of the first, and most widely-cited, circuit court decisions addressing standing in the Establishment Clause context after *Valley Forge*, the Eleventh Circuit confirms the significance of direct contact with the challenged activity. *See ACLU v. Rabun County Chamber of Commerce, Inc.*, ("*Rabun County*"), 698 F.2d 1098, 1108 (11th Cir.1983). In *Rabun County*, the plaintiffs challenged the display of a large cross in a Georgia state park. In discussing what constitutes sufficient injury, the Eleventh Circuit quoted the excerpt from *Valley Forge* set forth above—standing exists if the claimants were " 'subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them.' " *Rabun County*, 698 F.2d at 1108 (quoting *Valley Forge*, 454 U.S. at 487 n. 22, 102 S.Ct. 752 (discussing *Schempp*, 374 U.S. 203, 83 S.Ct. 1560)). Thereafter, the Eleventh Circuit explained that one of the plaintiffs had standing due to his direct contact with the display:

[B]ecause the cross is clearly visible from the porch of his summer cabin at the religious camp which he directs as well as from the roadway he must use to reach the camp, plaintiff Kaman has little choice but to continually view the cross and suffer from the spiritual harm

to which he testified.... [W]e are unable to find any qualitative differences between the injury suffered by the plaintiffs in this case and that which the Court found in [*Schempp*].

*Id.*

Several years later, the Ninth Circuit cited *Rabun County* and adopted a second standard that the Eleventh Circuit articulated therein for assessing the existence of standing, drawn from *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), and *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Under this standard, injury for purposes of standing occurs when a plaintiff is "not ... able to freely use public areas." *Hewitt v. Joyner*, 940 F.2d 1561, 1564 (9th Cir.1991) (citing *Rabun County*, 698 F.2d at 1107–1108) (additional citation omitted); *Ellis v. City of La Mesa*, 990 F.2d 1518, 1523 (9th Cir.1993), (quoting *Hewitt*, 940 F.2d at 1564), *cert. denied sub nom. County of San Diego v. Murphy*, 512 U.S. 1220, 114 S.Ct. 2707, 129 L.Ed.2d 834 (1994). The plaintiffs in *Ellis* satisfied the standard—two avoided parks containing crosses and the third avoided bringing customers to the town where he resided because police cars displayed the town insignia containing a cross. 990 F.2d 1518, 1523.

In subsequent actions, the Ninth Circuit has continued to apply this standard without describing the specific conduct that satisfied it. *See Separation of Church and State Comm. v. City of Eugene*, 93 F.3d 617, 619 n. 2 (9th Cir.1996) (stating that plaintiffs had standing "because they alleged that the cross prevented them freely using the area"). However, this standard is inapplicable to the action at bar because Plaintiffs' contact with the Proclamation does not interfere with their use of public property. The Ninth Circuit has not addressed the issue of injury resulting from unwelcome direct contact with religious displays or exercises absent interference with use of a public area, except in the context of municipal taxpayer standing. *See Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 797–98 (9th Cir.1999) (*en banc*).

Other circuits have addressed the issue, however. Four years after its decision in *Rabun County*, the Eleventh Circuit addressed the issue of standing in the Establishment Clause context again. *See Saladin v. City of Milledgeville*, 812 F.2d 687 (11th Cir.1987). In *Saladin*, the plaintiffs challenged a city's use of a seal, printed on city stationery and embossed on official documents, containing the word "Christianity." [1] 812 F.2d at 688–89. The Eleventh Circuit once again analyzed standing by determining whether the plaintiffs were "subjected to unwelcome religious statements" and " 'directly affected by [those statements].' " *Saladin*, 812 F.2d at 692 (quoting *Schempp*, 374 U.S. at 224 n. 9, 83 S.Ct. 1560, and citing *Valley Forge*, 454 U.S. at 486 n. 22, 102 S.Ct. 752, and *Rabun County*, 698 F.2d at 1107–1108). Applying this standard, the Eleventh Circuit concluded that the plaintiffs had standing because they "c[a]me into direct contact with the offensive conduct" by receiving and viewing, on a regular basis, correspondence from the city containing the seal. *Saladin*, 812 F.2d at 692.

In reaching its decision in *Saladin*, the Eleventh Circuit did not rely on the portion of *Rabun County*, 698 F.2d at 1105–1107, in which it had reasoned that direct contact, or avoidance, interfered with the plaintiffs' ability to use public property. This rationale did not fit an action challenging municipal seals on stationery. Instead, the Eleventh Circuit explained:

"[T]he presence of the word on the seal offends the [plaintiffs] because *the seal represents the City's endorsement of Christianity and thus makes the appel-*

---

**1.** The word "Christianity" was not legible on the printed and embossed copies of the seal, but the Eleventh Circuit considered the illegibility immaterial because the particular appellants knew that the illegible mark was the word "Christianity" regardless of whether they could read it. *Id.* at 691–92.

*lants feel like second class citizens."* *Id.* at 692–93 (emphasis added). The message communicated by the seal, appellants assert, is that ... Christianity is the "litmus test" of being a "true" citizen of Milledgeville. The plaintiffs here, unlike the plaintiffs in *Valley Forge,* clearly have more than an abstract interest in seeing that the City of Milledgeville observed the Constitution: *they are part of the City and are directly affronted* by the presence of the allegedly offensive word on the city seal.

*Id.* at 692–93 (footnote omitted; emphasis added). The feeling of being a "second class citizen," subordinate to others in the local community, was the injury suffered by area residents who found the seal offensive.

The other circuits that have addressed the issue uniformly agree with the Eleventh Circuit that claimants are injured, for standing purposes, if they are either offended by viewing, or forced to avoid, a religious display in the area where they live or work. Like the Eleventh Circuit, the Fourth and Seventh Circuits expressly rely on the distinction drawn by the Supreme Court between the plaintiffs in *Valley Forge* and those in *Schempp. See Suhre v. Haywood County,* 131 F.3d 1083, 1086–89 (4th Cir.1997) (quoting *Valley Forge,* 454 U.S. at 487 n. 22, 102 S.Ct. 752); *see also Doe v. County of Montgomery,* ("*County of Montgomery*"), 41 F.3d 1156, 1159 (7th Cir.1994) (citing same). The Fourth Circuit explained:

[L]ike *Schempp* before it, *Valley Forge* recognized that *direct contact* with an unwelcome religious exercise or display *works a personal injury distinct from* and in addition to *each citizen's general grievance against unconstitutional government conduct....* The Supreme Court identified *the proximity of the plaintiffs* to the conduct they challenged as a critical factual distinction between [the plaintiffs in those two cases].

*Suhre,* 131 F.3d at 1086 (emphasis added). The Sixth Circuit likewise stated that

whether psychological injury creates standing "depends on the directness of the harm." *Washegesic,* 33 F.3d at 682. The Sixth Circuit distinguished between the injury suffered by a plaintiff who comes into continuing, direct contact with a religious display and the plaintiffs in *Valley Forge,* describing the injury of the latter as "remote, vicarious, [and] generalized." *Id.* at 682–83.

The Fourth and the Seventh Circuits also have drawn helpful distinctions between the plaintiffs who possessed standing, and individuals, actual or hypothetical, who did not. In the Seventh Circuit decision, Montgomery County residents had standing to challenge a large sign over the main entrance to the county courthouse, stating: "THE WORLD NEEDS GOD." *See County of Montgomery,* 41 F.3d at 1158. These county residents had entered the courthouse to serve on juries and register to vote, and indicated that they might enter it again for other governmental matters. *Id.* at 1158, 1161 n. 3. Likewise, in *Suhre,* 131 F.3d at 1086, the plaintiff, a county resident, had standing because, as an atheist, he was offended and distressed by the display. "He also fear[ed] that the presence of the Ten Commandments skews the application of the law by influencing juries to base their decision on religious rather than legal precepts." *Id.* In contrast, another plaintiff in *County of Montgomery,* 41 F.3d at 1161, an attorney practicing in another part of Illinois, lacked standing. *Id.* at 1161. Although the attorney averred that he would not appear in the Montgomery County Courthouse due to the sign, he had no office in the county and offered no evidence that he had turned down cases that would require such an appearance. *Id.* Thus, he did not have sufficient proximity to the offensive conduct.

The Fifth and Tenth Circuits likewise have concluded that standing can be based on a local resident's direct contact with a display he or she finds offensive. *See Murray v. City of Austin, Texas,* 947 F.2d

147, 151 (5th Cir.1991), *cert. denied*, 505 U.S. 1219, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992); *Foremaster v. City of St. George*, 882 F.2d 1485, 1486 (10th Cir.1989), *cert. denied*, 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990). The analysis of standing in both of these decisions is more cursory, but both courts rely on the Eleventh Circuit's decision in *Saladin*, 812 F.2d 687. The direct contact and injuries described in these decision are similar to those in the decisions discussed above. For example, the plaintiff in *Foremaster* worked in a city that displayed a logo containing a Mormon temple and was "directly confronted by the logo on a daily basis" because it appeared on city vehicles. *Foremaster*, 882 F.2d at 1491. He alleged: "[T]he visual impact of seeing that Temple on a daily basis as part of an official emblem ... has and continues to greatly offend, intimidate, and affect me." *Id.* at 1490–91.

As explained above, the harm resulting from a religious display can occur through either direct contact or avoidance. However, several of the circuit courts have explained that a change in behavior, such as altering a travel route to avoid a religious display, is a sufficient, but not a necessary, injury for purposes of standing. *See, e.g., Foremaster*, 882 F.2d at 1486. The Fourth Circuit provides the best explanation of why behavior change is unnecessary:

> Rules of standing that require plaintiffs to avoid public places would make religious minorities into outcasts. Forcing an Establishment Clause plaintiff to avoid the display of which he complains in order to gain standing to challenge it only imposes an extra penalty on individuals already alleged to be suffering a violation of their constitutional rights. We do not think Article III requires as much.

*Suhre*, 131 F.3d at 1088. The Seventh Circuit is the only circuit that once required a showing of altered behavior to find injury in Establishment Clause cases challenging religious displays. *See id.* (citing *Freedom From Religion Foundation, Inc. v. Zielke*, 845 F.2d 1463, 1468 (7th Cir.1988), and *Gonzales v. North Township*, 4 F.3d 1412, 1416 (7th Cir.1993)). However, the Seventh Circuit subsequently distinguished its earlier decisions and concluded that a change in behavior is unnecessary.[2] *See County of Montgomery*, 41 F.3d at 1160–61.

Like the injuries sufficient to establish standing in many of the decisions discussed above, the injuries suffered by the Plaintiffs at bar are directly impacted by Plaintiffs' residency in Gilbert, the town engaged in the challenged conduct. In its prior order, the Court stated:

> Ellen and Ellis Sklar, two of the named Plaintiffs, are residents of Gilbert who are Jewish. *The Sklars aver that the Bible Week Proclamation offended them and made them feel excluded by the Town in which they reside and by its Mayor "because [they are] not part of the Town's Christian majority".* (Ellen Sklar Aff. at ¶ 6, Exh. D to Pls.' Response; Ellis Sklar Aff. at ¶ 4, Exh. E. to Pls.' Response).

*AzCLU*, 88 F.Supp.2d at 1075 (emphasis added). The Sklars' injury is similar to the injury of the plaintiffs in the City of Milledgeville, who were made to feel like "second class citizens" by the inclusion of the word "Christianity" on the city seal. *See Saladin*, 812 F.2d at 692–93. Feelings of unwelcomeness and subordinate status may be even greater in the action at bar because the Proclamation was issued by the Mayor, the Town of Gilbert's highest elected official.

Like the plaintiffs in *Saladin*, the Sklars' residency in Gilbert placed them

**2.** This conclusion increases the persuasive value of the Sevenths Circuit's discussion in an earlier decision, in which it opined that individuals may be more likely to be "intensely distressed" by an unconstitutional display in the area where they reside. *See ACLU v. City of St. Charles*, 794 F.2d 265, 268 (7th Cir.1986).

into unwelcome direct contact with the Bible Week Proclamation. Ellis Sklar avers that he learned of the Proclamation from the media in 1997, and both of the Sklars aver that they learned of the proposed 1998 Proclamation, the one enjoined by this Court, from the media in 1998. The Court discerns no basis for distinguishing between unwelcome direct contact with the Proclamation through the media and unwelcome direct contact with a city seal printed on stationery and city vehicles. *See Saladin*, 812 F.2d at 692–93. The latter is a visual symbol, the former, a textual statement announced verbally at a Town Council meeting. That the Proclamation is announced rather than displayed does not preclude unwelcome direct contact with the Proclamation via news reports. A reported ·Proclamation can be more invasive than a visual display due to the pervasiveness of media coverage.[3] To avoid the Proclamation, Plaintiffs would be faced not with the option of merely altering a travel route. Rather, they would need to avoid the media entirely, an option close to impossible in this age. Moreover, no such avoidance is required. *See Suhre*, 131 F.3d at 1088.

The Sklars were directly and personally affected by the Bible Week Proclamation. Thus, their injury is unlike the injury suffered by the Plaintiffs in *Valley Forge*, i.e., " 'the abstract injury in nonobservance of the Constitution asserted by . . . citizens.' " 454 U.S. at 482, 102 S.Ct. 752 (quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 223 n. 12, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)). The abstract injury in *Valley Forge* is the type of injury that would be suffered by a person residing hundreds of miles away who read about the Bible Week Proclamation issued in Gilbert and found it offensive to his or her beliefs about the Constitution's mandates. *Cf. Suhre*, 131 F.3d at 1086 (distinguishing the plaintiff, a Haywood

County, North Carolina resident, from someone living in Omaha who found the Ten Commandments display offensive). As the Supreme Court states, "[a] firm[ ] commit[ment] to the constitutional principle of separation of church and State" is not rendered a concrete injury "by the intensity of the litigant's interest or the fervor of his [or her] advocacy." *Id.* at 485, 102 S.Ct. 752. Although the Sklars expressed a commitment to the principle of church-state separation, they also suffered the particularized injury of feeling unwelcome and excluded by the town wherein they reside.

■ The distinction between the particularized injury asserted by the Sklars and the abstract injury insufficient for standing is further confirmed by the Supreme Court's decision in *Allen*, 468 U.S. 737, 104 S.Ct. 3315. The Supreme Court explained therein that the stigmatization and denigration suffered by members of a racial minority as a result of discriminatory governmental conduct supports standing, but only for those members of the group who are personally affected by the conduct. *Id.* at 753–55, 104 S.Ct. 3315. Those members of a racial minority personally unaffected by the government's actions cannot obtain standing by claiming that they, too, are stigmatized, according to the Supreme Court, because such an "abstract stigmatic injury" would result in extension of standing "nationwide to all members of the particular racial groups against which the Government was alleged to be discriminating" regardless of whether the plaintiffs were personally affected by the unconstitutional conduct. *Id.* at 755–56, 104 S.Ct. 3315. Only those individuals affected by the conduct have the "concrete, personal interest" that suffices to confer standing. *See id.* at 757, 104 S.Ct. 3315. Applying this reasoning, the local residents of Gilbert who, upon issuance of the Bible Week

---

**3.** *See* Meghan Tomasik, Note, *Nothing to Stand On: Reading the Standing Doctrine to Include Religious Proclamations Through Arizona Civil Liberties Union v. Dunham*, 32 Ariz. St. L.J. 345 (2000) (student commentator on contact via the media as sufficient direct contact).

Proclamation, are made to feel like outsiders unwelcome in their own hometown are directly affected by the Proclamation and have standing to challenge it.

Unlike the Plaintiffs in the actions discussed above, the Sklars also provide independent evidence verifying their feelings of being shunned. This evidence consists of uncontroverted harassing and defamatory mail and phone calls the Sklars received after Ellen Sklar expressed opposition to the proposed 1998 Bible Week Proclamation. (Ellen Sklar Aff. at ¶ 7; Ellis Sklar Aff. at ¶ 5; *see also* Ellen Sklar Dep. at 32; Ellis Sklar Dep. at 96). As explained in the Court's prior order: "Ellis Sklar testified in his deposition that one caller stated, 'You Goddamn Jews, we've had nothing but trouble with you since the beginning of time. You should have all been burned in Hell.'" *AzCLU*, 88 F.Supp.2d at 1077–78 (citing Ellis Sklar Dep. at 56). A Gilbert Police Department report also states that the Sklars received abusive mail, specifically, "correspondence . . . which appeared to be anti-Semitic" on November 12, 1998. (Police Report, Exh. A. to Pls.' Reply to Mot. for Reconsideration). As explained in the Court's prior order, the harassing mail and phone calls are injuries, but they satisfy the traceability and redressability requirements of standing only if the Plaintiffs can establish that the harassment was a response to the Sklar's complaints about the Proclamation, not the Sklar's initiation of litigation. These requirements have not been established in the facts before the Court. *See AzCLU*, 88 F.Supp.2d at 1080. Nonetheless, regardless of when it occurred, the harassing conduct confirms the legitimacy of the Sklars' feelings of exclusion from the community.

The Sklars are not the only Plaintiffs directly affected by the Bible Week Proclamation. William Gregory, a Gilbert resident who is Christian, averred that the Bible Week Proclamation "deeply offends" him because "[he] believe[s] that it cheapens holy scriptures" by affording them significance on a par with that of other Proclamation subjects such as "Bowling Week" and "National Pet Week." (Gregory Aff. at ¶ 7, Exh. G to Pls.' Response). He also finds the Proclamation demeaning because it suggests that "[his] religion and the Bible . . . need governmental support." (*Id.* at ¶ 5). Eileen Levine, another Christian resident of Gilbert who learned of the Bible Week Proclamation through the media, finds the Proclamation demeaning for the same reason.[4] (Levine Aff. at ¶ 7). Levine is an AzCLU member, (*see* Levine Aff. at ¶ 2), whose affidavit is offered to establish the AzCLU's standing as an organization litigating on behalf of its members. *See Associated General Contractors of Am. v. Metropolitan Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir.1998).

Gregory's and Levine's feelings of offense at the Town of Gilbert's and the Mayor's perceived insult to their religious beliefs, like the offense experienced by the individuals in the cases discussed above, are enhanced due to their residency in Gilbert. They are "part of the City and are directly affronted [by the Proclamation]." *Saladin*, 812 F.2d at 693. Moreover, like the Sklars, Gregory and Levine can avoid the Proclamation only by avoiding media contact entirely. Gregory and Levine also have suffered an injury sufficient to establish standing.

Recognizing that the injuries of the Sklars, Gregory, and Levine are sufficient for standing purposes does not provide other potential plaintiffs "a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court," the concern ex-

---

4. In the prior order, the Court denied as moot the Defendant Town of Gilbert's Motion to Strike Levine's affidavit. However, the Court's reconsideration of the standing issue requires that the Motion to Strike be addressed. The Town merely argues that the affidavit should be stricken because it does not establish injury. This argument pertains to the weight of the affidavit, not to its admissibility. Therefore, the Motion to Strike will be denied.

pressed by the Supreme Court in *Valley Forge*, 454 U.S. at 487, 102 S.Ct. 752. Rather, this conclusion merely allows those local residents directly affected by the Town's and Mayor's action to challenge it. The genuine feeling of exclusion from the community in which one resides, and the deep offense from a perceived insult to one's religious view committed by the government in one's community, satisfy the injury prong of standing.

As the Court's prior order explained, Plaintiffs also must satisfy "the traceability and redressability requirements for standing, i.e., the requirements 'that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.'" *AzCLU*, 88 F.Supp.2d at 1078 (quoting *Valley Forge*, 454 U.S. at 472, 102 S.Ct. 752 (internal citations and quotations omitted)). The Sklars' feelings of exclusion from the Town of Gilbert and Gregory's and Levine's feeling of offense from a perceived insult to their religious views were caused by issuance of the Proclamation and will be redressed if the 1997 Proclamation is declared unconstitutional, the Plaintiffs awarded nominal damages, and future Bible Week Proclamations of a similar nature enjoined. Traceability and redressability are satisfied. Therefore, all four Plaintiffs, the AzCLU, the Sklars, and Gregory, have standing to maintain this action.

Plaintiffs request that the court reconsider another matter. As noted above, this Court's prior order concluded, correctly, that the harassing mail and phone calls the Plaintiffs received as a result of their opposition to Bible Week · constituted an injury. *See AzCLU*, 88 F.Supp.2d at 1078. However, Plaintiffs did not satisfy the traceability and redressability requirements because they did not establish that these incidents occurred prior to the filing of the lawsuit, rather than as a result of the lawsuit. *Id.* at 1080. Plaintiffs request

reconsideration of the latter conclusion. For support, Plaintiffs attached the copy of a Report by the Gilbert Police Department referenced above, which states that the Sklars received offensive mail, specifically, "correspondence ... which appeared to be anti-Semitic" on November 12, 1998, a date prior to the filing of this action on November 16, 1998.

Plaintiffs argue that the harassing mail referenced in the report establishes standing. As a general rule, the Court does not consider evidence on a motion for reconsideration if the evidence could have been provided before the decision was rendered initially. *See Multnomah County*, 5 F.3d at 1263. However, in the action at bar, the Court's prior order provided Plaintiffs the first notice that the Court considered the date of receipt of the harassing mail material to the issue of standing. Consideration of evidence offered to address a concern first addressed by the Court, rather than by the parties, is warranted. Such consideration is particularly warranted in the action at bar because the Court did not hold a hearing for the parties to present evidence regarding standing.

The harassing mail referenced in the Police Department Report does not help establish standing because Plaintiffs have not shown that the harassing mail resulted from the issuance of the 1997 Bible Week Proclamation, the only Proclamation that remains at issue. It is likely that the harassing mail was sent as a result of Ellen Sklar's opposition to the proposed 1998 Proclamation, expressed at a Town Council meeting earlier in November.[5] Plaintiffs also reference a letter to the editor published in the Gilbert Tribune on November 12, 1998 as another example of harassing mail that occurred before the litigation ensued. Even if a published letter to a newspaper editor, rather than a letter directly to the Plaintiffs, could establish injury for standing purposes, an issue the Court does not decide, Plaintiffs have

5. The constitutionality of the proposed 1998 Proclamation was rendered moot by the

Court's issuance of a TRO prohibiting issuance of the Proclamation.

not established that the letter resulted from the issuance of the 1997 Bible Week Proclamation. Again, this letter appears to be a result of Sklar's opposition to the proposed 1998 Proclamation.

In their Motion for Reconsideration, Plaintiffs also ask the Court to correct what they describe as "factual errors." Plaintiffs state that, to the extent the Court suggested that the Town incurred attorneys' fees and expenses for stationery and postage only after the litigation ensued, the suggestion is incorrect. The Court did not make that finding—it merely stated: "It is not clear whether the Town incurred this expense [of attorneys' fees], or the expense of stationery and stamps for correspondence, before or only after the instant litigation ensued." *AzCLU,* 88 F.Supp.2d at 1082–83. Plaintiffs attach an excerpt of the deposition of Mayor Dunham. In the excerpt, Dunham refers to a copy of a letter she sent a constituent in December, 1997, a letter that was already in the record. (Letter from Dunham, Dec. 1997, attached as Exh. 5 to Pls.' Response to Defs.' Mot. to Dismiss). The letter to the constituent establishes that the Town incurred the expense of at least one item of correspondence before the litigation ensued.

Plaintiffs also point to the contents of the letter, in which Mayor Dunham states that the Town's counsel had advised her that the Bible Week Proclamation did not appear to violate the Establishment Clause. (Dunham Dep., Exh. A to Pls.' Mot. for Reconsideration; Letter from Dunham, Dec. 1997). The Court referred to this letter in the prior order, but not for this point. The Court's decision provided Plaintiffs the first notice that the period of time in which the correspondence costs and attorneys' fees were incurred might be material to the issue of standing. Therefore, the Court will amend its prior decision to reflect Dunham's statement that the Town's counsel was consulted in 1997.

Because Plaintiffs have established standing, the order granting Defendants'

Motion to Dismiss will be vacated. The current order renders moot Plaintiffs' arguments about the appropriate award of costs. A decision addressing the argument in the Motions to Dismiss, that Plaintiffs failed to state a claim, will issue separately.

Accordingly,

**IT IS ORDERED** granting Plaintiffs' Motion for Reconsideration. (Dkt.# 118).

**IT IS FURTHER ORDERED** vacating the Order of September 30, 1999 granting the Defendants' Motion to Dismiss in part. The Motions to Dismiss are denied with respect to the issue of standing. The issue of whether the Complaint states a claim will be addressed in a separate order. The following portions of the analysis contained in the Order are vacated:

1. On page 1075, in the paragraph beginning: "It is undisputed that the mental anguish and profound offense that the named Plaintiffs experienced [ . . . ] is genuine[,]" delete the last two sentences of the paragraph, beginning with "[n]onetheless," and their accompanying citations.

2. On page 1082, in the paragraph beginning: "In addition to the expense for certificates, stamps, and stationery [ . . . ], the Town expended $1,989 in attorneys fees for legal research and advice [ . . . ]", delete the remainder of the paragraph, beginning with "It is not clear."

The remainder of the analysis is not vacated.

**IT IS FURTHER ORDERED** renewing the Town of Gilbert's Motion to Strike the Affidavit of Eileen Levine, and denying the Motion. (Dkt.# 96).