**UNITED STATES of America,
Plaintiff,**

**v.**

**CERTAIN LAND SITUATED IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN; et al., Defendants.**

**No. 79–CV–73934–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 27, 2001.

Raymond Hamilton, Asst. AUSA, Department of Justice, Albuquerque, NM, Matthew Clifford, Asst. AUSA, Department of Justice, Washington, DC, for plaintiff.

Craig L. John, Dykema, Gossett, Bloomfield Hills, NM, for Detroit Int'l Bridge Co.

*OPINION AND ORDER VACATING (1) JUNE 30, 1987 ORDER OF DISMISSAL WITHOUT PREJUDICE AS TO DEFENDANT DETROIT INTERNATIONAL BRIDGE COMPANY AND (2) AUGUST 7, 1985 AND JANUARY 6, 1986 ORDERS REGARDING TRIAL BY LAND COMMISSION*

ROSEN, District Judge.

## I. INTRODUCTION

This 22–year–old condemnation action was scheduled for a jury trial on December 4, 2001. The Court met with counsel for the parties the morning of December 4—the morning that trial was scheduled to begin—to discuss pending motions and other matters pertaining to the trial of this cause. During this December 4, 2001 conference, counsel for the Detroit International Bridge Company ("DIBCO") brought to the Court's and Plaintiff's counsel's attention for the first time,[1] three orders that had been entered in this case in 1985, 1986 and 1987, i.e., five years before this Court's first involvement in the matter.[2] The subject Orders, which were entered by this Court's predecessor, are as follows: an August 7, 1985 "Order to Appoint Use of a Commission" [Doc. No. 173] and February 3, 1986 "Order Appointing Land Commissioners" [Doc. No. 177] which provide that this cause is to be tried before a court-appointed three-member land commission; and a June 30, 1987 "Order of Dismissal" [Doc. No. 190], dis-

---

1. The current Assistant U.S. Attorney representing the Government has only been on the case for a few months. He did not appear in this matter until August 2001. The Assistant U.S. Attorney who previously represented the Government in this action from 1979 to 2001, retired earlier this year.

2. When the instant action was originally filed in 1979, it was assigned to the Hon. Ralph B.

Guy. The case was subsequently re-assigned to the Hon. Horace W. Gilmore upon Judge Gilmore's appointment to the bench in 1980. In 1984, the matter was re-assigned to the Hon. Richard J. Suhrheinrich. This Court assumed the docket of Judge Suhrheinrich upon Judge Suhrheinrich's appointment to the Sixth Circuit Court of Appeals in July of 1990.

missing this case as to both DIBCO and a former co-defendant, Nash Sogoian, without prejudice. Counsel for DIBCO represented to the Court on December 4, 2001 that he only had become aware of these Orders the prior evening.

Despite continuous active participation by both DIBCO and the Government throughout the entire course of the past 10 years of proceedings before this Court, neither party ever realized, much less raised the question, prior to December 4, 2001 that an order of dismissal had ever been entered as to DIBCO, or that the case was ordered to be tried before a land commission. To the contrary, by their conduct throughout these past 10 years, all parties to this action proceeded under the assumption—and, indeed, led this Court and the Sixth Circuit Court of Appeals to understand—that this case remained, since its filing in 1979, an open, active, and ongoing action which ultimately would be tried to a jury.

## II. *HISTORICAL BACKGROUND*

All parties are well-aware of the protracted history of this action. This case began in 1979 with the U.S. Government's condemnation of three parcels of land near the Ambassador Bridge for the expansion of the U.S. Customs cargo inspection facility. The two largest of those parcels were owned by DIBCO. The third parcel, a strip of undeveloped land of less than 1/10 acre that was situated between the two DIBCO parcels, was owned by an individual named Nash Sogoian. A Stipulation and Judgment was entered on September 17, 1987 with regard to Sogoian's parcel pursuant to which Sogoian was paid $35,000 for his property. [*See* Docket Nos. 196, 197 and 198.]

From the record, it appears that this Court's predecessor was under the impression that the case had been "amicably set-tled" as to both Sogoian and DIBCO three months earlier because on June 30, 1987, an Order of Dismissal was entered. [*See* Pleading No. 190.] This Order of Dismissal specifically stated that it was "without prejudice to the right of the plaintiff to move to vacate this Order, upon good cause shown, within thirty (30) days, if settlement is not consummated." The Government did timely move to vacate the Dismissal Order on July 30, 1987, and DIBCO concurred in the Government's motion. [*See* Pleading No. 191.]

With regard to vacating the Order of Dismissal as to DIBCO, the Government stated in its Brief in Support of Motion to Vacate as follows:

Detroit International Bridge Company (DIBC) and the United States are close to achieving a settlement. **A draft of a Memorandum of Agreement on which to base a settlement** was received [by the Government] from counsel for DIBC on July 10, 1987. The parties have agreed on the amount of money to be paid DIBC as just compensation for parcels 1 and 3. To that end, $412,000.00 which represents the difference between the deposit of estimated just compensation and the amount agreed upon for settlement has been deposited with the court. **There appears to be one major obstacle remaining before a final settlement can be achieved.** The parties have devoted all of their efforts over the past year and a half toward achieving a settlement and are committed to doing so. The United States and DIBC believe that settlement can be achieved by the end of October 1987, and therefore ask that the Order of Dismissal be vacated.

*Id.* (Emphasis added.)

The Government also asked that the Court vacate the Order of Dismissal as it pertained to Mr. Sogoian's property. With

regard to the Sogoian parcel, the Government stated in its Motion to Vacate that it had believed that a settlement had been reached and dismissal papers had been sent to Sogoian's counsel on June 29, 1987. However, according to the Government, Sogoian subsequently personally telephoned the Government's counsel and repudiated the anticipated settlement. *Id.*

The record further reflects that as of September 1, 1987, the Court was advised by counsel for the Government that no settlement as to either Sogoian or DIBCO had yet been consummated. In a letter dated September 1, 1987 which was copied to the Court,[3] the Government wrote:

> Pursuant to instructions from Judge Suhrheinrich, I am writing to set up a mutually agreeable trial date to determine the amount of just compensation due to Mr. Nash Sogoian for the condemnation of his property. Regrettably, the settlement we thought we had achieved in the case had not materialized.
>
> \* \* \* \* \* \*
>
> I should also advise you that negotiations with Detroit International Bridge Company (DIBC) are nearing completion. **There are a few crucial issues remaining to be resolved. We and DIBC are hopeful that they will be resolved. If not, we will also have to ask that a date be set for trial regarding the just compensation due DIBC. We should know within the next 4 or 5 weeks whether that will be necessary(4)27**

[*See* Pleading No. 193 (emphasis added).]

The Court subsequently entered an "Order Granting Plaintiff's Motion to Vacate Order of Dismissal" on September 14, 1987. [*See* Docket No. 195.] This Order, which bears the caption, "United States of America v. Nash P. Sogoian," states as follows:

### ORDER GRANTING PLAINTIFF'S MOTION TO VACATE ORDER OF DISMISSAL

IT IS ORDERED that plaintiff's motion to vacate the order of dismissal as to the above-named defendant be, and hereby is, GRANTED and the *case* is reinstated to the active docket of this court.

[Pleading No. 195 (emphasis added).]

The docket entry pertaining to this Order states, "Order granting plaintiff's motion to vacate order of dismissal and reinstating case to the active docket of this court." [*See* Docket No. 195.] On September 17, 1987, a Stipulation and "Judgment Determining Just Compensation as to Parcel 2—Nash P. Sogoian" was entered with regard to the taking of the Sogoian parcel thereby concluding the proceedings as to Mr. Sogoian. However, no such Judgment as to DIBCO's property was ever entered.

Indeed, no settlement agreement between the Government and DIBCO was ever consummated. The Memorandum of Agreement was not even executed by the parties until *May 21, 1991,* nearly three years after entry of the Order of Dismissal. Furthermore, by its terms, the MOA was of no effect until it was approved by the U.S. Attorney General [*see* MOA § 8.4, p. 29] and that approval was not obtained until April 30, 1992. [*See* Approval Memo-

---

**3.** The letter was addressed to Dr. George Cartmill who had been appointed by Judge Suhrheinrich as one of the three land commissioners to try this case. The Court was copied on this letter and the Court's copy is filed as part of the official record of this case. [*See* Pleading No. 193.]

randum, Intervenors' 10/14/98 Supplemental Brief, Ex. A.]

Notwithstanding that the MOA was not even executed when the June 30, 1987 Order of Dismissal was entered, the plain language of the MOA makes clear that it does not reflect a consummated settlement.

The very first paragraph of the MOA states:

This Memorandum of Agreement ("Agreement") is made between the United States of America, acting by and through the General Services Administration ("GSA"); and the Detroit International Bridge Company ("DIBC"), and its successors and assigns, and is made to set forth certain principles to be applied in resolving an eminent domain lawsuit now pending between the parties hereto, United States of America v. Certain Land Situated in the City of Detroit, et. al., Civil NO. 79–73934, United States District Court, Eastern District of Michigan. **This Agreement *envisions, is intended to lead to,* and shall be part of the considerations for settlement of the lawsuit by a stipulation and further agreements of the parties incorporating principles set forth herein.**

[*See* MOA, p. 1.]

Moreover, pursuant to the MOA, this litigation does not terminate until a Stipulation of Settlement based upon the terms of the MOA is entered and the agreed upon amount of just compensation is paid. [MOA § 8.3, p. 28.] This has never occurred.

### Proceedings in This Court Since 1991.

In December 1991, after news reports of the Government's and DIBCO's proposed settlement appeared in the Detroit newspapers, Walter Lubienski on his own behalf and on behalf of his duty-free shop, Commodities Export Company, moved to intervene in the action and enjoin implementation of the MOA.[4] From that point on, both the Government and DIBCO have been active participants in the proceedings before this Court.

In April 1993, at the hearing on Commodities Export Company's first appeal of this matter before the Sixth Circuit Court of Appeals—a hearing at which the Government and DIBCO both appeared and argued—in explaining the MOA, the Government stated, "It is intended by the parties that this [action] be concluded by the entry of a final judgment and stipulation. *That has not occurred yet.*" [4/30/93 Tr., p. 32.]

In August 1994, in pleadings filed with this Court, DIBCO reiterated the non-final nature of the MOA and the continuing nature of this action. In April 7, 1994 pleadings, DIBCO characterized the MOA as a document "*intended to lead to the settlement* of the Government's condemnation action against DIBC." [DIBCO's Brief in Opposition to Motion for Preliminary Injunction, p. 5.] DIBCO further stated that the Government and DIBCO had not reached an agreement as to certain important provisions in the MOA and that the settlement discussions between DIBC and the Government had been "suspended." [*See* DIBCO's 6/6/94 Response to Plaintiff's Supplemental Brief, p. 4.]

DIBCO and the Government still failed to agree as to significant terms in the MOA as of November 20, 1998 and DIBCO asked at that time that this matter be set for trial. [*See* DIBCO's "Supplemental

---

4. The Government ultimately filed separate condemnation actions with respect to Lubienski's and Commodities' properties. The Lubienski and Commodities actions were settled earlier this year.

Brief in Opposition to Intervenors' Motion for Summary Judgment and in Support of DIBC's Cross–Motion for Summary Judgment", p. 4.] By December 1, 2000, DIBCO took the position that the MOA was no longer a binding agreement. [*See* the Government's and DIBCO's 12/1/00 "Joint Motion to Reschedule Filing of Pretrial Order and Conference," p. 3.]

As of December 4, 2001, the last date on which the parties appeared before this Court, the Government and DIBCO had not resolved their differences, and although the Government's position in December 2000 was that the MOA was still an enforceable agreement, as of December 4, 2001, the Government's position now is that the MOA is null and void.

Since December 1991, the Government and DIBCO have filed more than 30 pleadings, motions and briefs, appeared at no fewer than seven pretrial conferences, appeared and argued at five hearings in this Court and two hearings before the Court of Appeals, and participated in settlement arbitration before a Special Master. At no time did either party ever take the position that this case was no longer an active case or even mention that an Order of Dismissal had previously been entered or argue that this Court was, therefore, without jurisdiction to continue with proceedings in this matter. Indeed, as discussed above, both the Government and DIBCO repeatedly emphasized to both this Court and the Court of Appeals that this condemnation action was not yet concluded and that no settlement had yet occurred.

Now, on the eve of trial, with settlement discussions having failed to produce settlement, DIBCO has first noticed the issue of the earlier dismissal order and the orders appointing the land commissioners.[5]

## III. DISCUSSION

### A. SINCE NO FINAL JUDGMENT HAS EVER BEEN ENTERED ADJUDICATING THE RIGHTS AND LIABILITIES OF ALL OF THE DEFENDANTS, THE COURT HAS THE AUTHORITY PURSUANT TO FED. R. CIV. PRO. 54(b) TO REVISE ANY ORDERS PREVIOUSLY ENTERED.

As indicated above, this case as originally filed involved two land-owner party-defendants—DIBCO and Nash Sogoian. A Judgment Determining Just Compensation due to Nash Sogoian for his parcel of land is the only Judgment ever entered in this case. No Judgment adjudicating the rights and liabilities of DIBCO has ever been entered.

It is well-established that where, as here, a judgment is entered only as to one party in a multiple party action, absent certification by the court of finality pursuant to Fed. R. Civ. Pro. 54(b), "the action is not terminated as to any of the claims or parties and any order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." *See* Fed. R. Civ. Pro. 54(b); *Jalapeno Property Management, LLC v. Dukas*, 265 F.3d 506, 513 (6th Cir.2001). *See also, Egervary v. Young*, 159 F.Supp.2d 132, 155 (E.D.Pa.2001) (order dismissing plaintiff's complaint with prejudice as to only two defendants was not a final order; therefore, pursuant to Rule 54, the order did not terminate the action as to any of the defendants and the order of dismissal was "subject to revision" at any time); *Pivot Point International,*

---

**5.** Although DIBCO's counsel raised these issues on December 4, 2001, he did not contend, at least formally, that the case could not proceed, and acknowledged to the Court in chambers that all parties, including DIBCO, had proceeded for more than the past decade under the assumption that the DIBCO portion of the action was still alive and well.

*Inc. v. Charlene Products, Inc.*, 816 F.Supp. 1286, 1287 (N.D.Ill.1993) (court had authority under Rule 54(b) to reconsider and vacate a predecessor court's entry of partial summary judgment on one of plaintiff's claims in its multi-count complaint). *Cf., John Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82, 88, 42 S.Ct. 196, 198 (1922) (court at any time prior to entry of final judgment may modify or rescind interlocutory order).[6]

■ Applying the foregoing authorities to the facts of this case, it is clear to this Court that to clarify the record and to conform with the proceedings in this matter subsequent to June 30, 1987, the previously entered Order of Dismissal should now be vacated as to Defendant DIBCO for a number of reasons.

First, it is clear to this Court that the June 30, 1987 Order of Dismissal was entered as a *conditional* order, and never intended to operate as a final order. The Order dismissed the action as to both DIBCO and Nash Sogoian *"without prejudice to the right of plaintiff to move to vacate this order... within 30 days if settlement is not consummated."* Dismissal of the action, thus, was subject to the Government's right to move to vacate the order within 30 days.

The Government, with the concurrence of DIBCO, timely moved to vacate the Order of Dismissal as to both DIBCO and Nash Sogoian on July 30, 1987. In seeking vacation of the Order, the Government advised the Court that the settlement it thought it had reached with Mr. Sogoian had fallen through. With respect to DIBCO, however, the Government informed the Court that the parties had a draft Memorandum of Agreement they were working from and were *"close to achieving a settlement,"* but they were still negotiating settlement terms. A month later, on September 1, 1987, the Court was informed in a letter from counsel for the Government that the Government and DIBCO were still negotiating terms of a settlement and were hopeful that their differences would be resolved. They advised the Court at that time that they thought they would know "within the next 4 or 5 weeks" whether a trial would be necessary.

Two weeks later, on September 14, 1987, the Court entered an "Order Granting the Plaintiff's Motion to Vacate Order of Dismissal." Although titled as an order granting the Government's motion to vacate without qualification, the text of the Order states that the dismissal was vacated "as to the above-named defendant;" only Nash Sogoian is listed in the case caption of the Order. But the Order then continues, specifically stating that "the *case*"—not the case as to the above-named defendant only—"is reinstated to the active docket of this court." The subsequent September 17, 1987 "Judgment" was clearly entered only as to Nash Sogoian and his parcel of land. Nothing was ever entered to suggest any finality of decision by the Court as to DIBCO.

Thus, as this Court reads the September 14, 1987 Order Granting the Plaintiff's Motion to Vacate Order of Dismissal, the predecessor Court ruled on the Motion to Vacate as to Sogoian because Sogoian specifically repudiated the parties' settlement,[7] but withheld ruling on the Government's Motion as to DIBCO because the parties were still negotiating a settlement. The Court, therefore, ordered the case reinstated, leaving the Government's Mo-

---

**6.** *See also*, Advisory Committee Notes on Fed. R. Civ. Pro. 60(b) ("[I]nterlocutory judgments are not within the restrictions of [Rule 60(b)], but rather are subject to the complete power of the court that rendered them to afford such relief from them as justice requires.")

**7.** The docket of this case reflects that on that same date, September 14, 1987, the Court

tion to Vacate Dismissal as to DIBCO open for ruling at a later date in the event settlement that the parties had said they were negotiating was not consummated.

Furthermore, the Government and DIBCO, by their conduct throughout the subsequent 14 years, have acted as if this were an on-going case—and, indeed, periodically reported that settlement negotiations were continuing. Beyond any doubt, the express representations made on the record and in pleadings, motions and briefs during the last ten years establish that the parties themselves have believed all the while that the case before this Court is an open, active action, and has been since the order of reinstatement.

Based upon the foregoing, and the most recent representations of the parties that they are not able to reach a negotiated settlement, the Court finds that the June 30, 1987 Order of Dismissal should now finally be vacated as to DIBCO, as well. The parties have been unable to resolve their differences and it is evident that the settlement the parties have been negotiating over the past 14 years will not be consummated. Therefore, pursuant to the Court's authority under Fed. R. Civ. Pro. 54(b) to revise non-final orders at any time prior to entry of final judgment as to all parties, the Court will vacate the June 30, 1987 Order of Dismissal as to Defendant Detroit International Bridge Company.

**B. *EVEN ASSUMING THAT THE JUNE 30, 1987 ORDER WAS A "FINAL ORDER," THE COURT ARGUABLY HAS AUTHORITY PURSUANT TO FED. R. CIV. PRO. 60(b) TO VACATE THE JUNE 30, 1987 ORDER AS TO DIBCO.***

Although the Court finds that the June 30, 1987 Order was not a final order and is,

therefore, subject to revision at any time pursuant to Fed. R. Civ. Pro. 54(b), assuming that the June 30, 1987 Order *was* a final order, arguably Fed. R. Civ. Pro. 60(b) would provide the Court with authority to vacate it. Rule 60(b) provides as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered (3) fraud (whether heretofore denominated as intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken . . . .

As the Advisory Committee Notes on Rule 60(b) make clear, "the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief." Hence, this rule applies only to *final* judgments or orders.

Rule 60(b)(6) —the "catch all" provision for relief from a final judgment "for any

---

ordered that trial on Sogoian's parcel would commence on September 22, 1987. However, Sogoian and the Government ultimately reached an amicable settlement rendering trial unnecessary as to his parcel only.

other reason justifying relief from the judgment"—provides "extraordinary relief" which should be granted only in exceptional circumstances. *Ackermann v. United States,* 340 U.S. 193, 202, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Mallory v. Eyrich,* 922 F.2d 1273, 1281 (6th Cir.1991); *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir.1989); *In re Salem Mortgage Co.,* 791 F.2d 456 (6th Cir.1986). Exceptional circumstances under Rule 60(b) means "unusual and extreme situations where principles of equity mandate relief." *Olle v. Henry & Wright Corp.,* 910 F.2d 357, 365 (6th Cir.1990).

However, Rule 60(b)(6) relief must be based on grounds not covered by subsections (b)(1) through (5). *Blue Diamond Coal Co. v. Trustees of UMWA,* 249 F.3d 519, 524 (6th Cir.2001). *See also, Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863 n. 11, 108 S.Ct. 2194, 2204 n. 11, 100 L.Ed.2d 855 (1988).

The Court finds that none of the other five subsections of Rule 60(b) is applicable here. This is not a case of a void judgment or a satisfied judgment such that subsections (4) or (5) of Rule 60(b) would apply. Nor is there any evidence of fraud or newly discovered evidence as covered under subsections (2) and (3). Furthermore, there is nothing of record to establish that the Order of Dismissal was entered as the result of such "mistake, inadvertence, surprise or excusable neglect" as contemplated under subsection (1).

In *Overbee v. Van Waters & Rogers,* 765 F.2d 578, 580 (6th Cir.1985), the Sixth Circuit stated that a district court should grant relief from operation of an order or judgment under Rule 60(b)(6) when it determines in its sound discretion that "substantial justice would be served" by vacating a prior order. *Id. See also, Triplett v. Azordegan,* 478 F.Supp. 872 (N.D.Iowa 1977) (relief under Rule 60(b) is within the sound discretion of the court and that discretion is to be liberally applied to accord justice.)

■ Assuming *arguendo* that the June 30, 1987 Order of Dismissal was a "final" order, the Court finds that this case presents precisely the kind of "exceptional circumstances" which mandate Rule 60(b)(6) relief. As discussed above, the parties for more than a decade have proceeded with this action as if this case were an open, active, on-going action. None of the parties acted as if the case had been dismissed as to DIBCO, and neither this Court, nor the Court of Appeals (during the earlier interlocutory appeal of Commodities), ever acted consistent with a case in which a final order had been entered.

Since at least 1991, the Government and DIBCO have both been active participants in this action and have filed more than 30 pleadings, motions and briefs and appeared and argued at numerous pretrial conferences and hearings before both this Court and the Sixth Circuit Court of Appeals. Furthermore, just last year, both parties participated in settlement arbitration before a Special Master. They would not have done so had they believed that the case had already been settled and dismissed. Indeed, as discussed above, both the Government and DIBCO repeatedly emphasized to both this Court and the Court of Appeals that this condemnation action was not yet concluded and, although negotiations continued, no settlement had yet occurred. Having adopted a construction of the predecessor Court's Orders by their conduct since September 1987 treating this case as an open and on-going action, the Government and DIBCO should be estopped from maintaining a contrary position now.

■ Although the language of Rule 60(b) speaks of granting relief "on motion," the rule does not say whether the motion must be made by a party or whether the court can act on its own motion. While Rule 60(a) says that relief under that subsection may be granted "on the motion *of any party*," Rule 60(b) uses entirely unqualified language and states only "on motion." Case law construing Rule 60(b) establishes that, in most instances, a court may grant relief under Rule 60(b) *sua sponte.*

The traditional definition of *sua sponte* is that the court acts of "its own will or *motion.*" Black's Law Dictionary 1277 (5th ed.) (emphasis added). The Fourth Circuit has construed Rule 60(b) as not "depriving the court of the power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion." *United States v. Jacobs,* 298 F.2d 469, 472 (4th Cir.1961). Similarly, the Fifth Circuit has held that a district judge can vacate a judgment under Rule 60(b) "on its own motion." *McDowell v. Celebrezze,* 310 F.2d 43 (5th Cir.1962). The Ninth Circuit likewise has held that a judge may act *sua sponte* to repair mistakes in judgments and orders pursuant to Fed. R. Civ. Pro. 60(b)(1). In *Kingvision Pay–Per–View Ltd. v. Lake Alice Bar,* 168 F.3d 347 (9th Cir.1999), the court explained:

> Rule 1 [of the Federal Rules of Civil Procedure] says that the rules are to be construed to secure the "just" determination of every action. Justice is better served by letting a judge repair mistakes in default judgments more than ten days old, in the fortunate circumstances where the judge happens to notice them.

*Id.* at 352. *See also, International Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2nd Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978) (district courts may *sua sponte* cure errors pursuant to Rule 60(b)(6) if appropriate and the parties are on notice of the grounds for the decision); *Simer v. Rios,* 661 F.2d 655, 663 n. 18 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982) (Rule 60(b) invests a district court with authority to vacate a judgment *sua sponte.*)

■ Although in *Eaton v. Jamrog,* 984 F.2d 760 (6th Cir.1993), the Sixth Circuit held that the district courts may not act *sua sponte* to grant Rule 60(b) relief, the appellate court's ruling in that case has been narrowly construed and found to only prohibit a district court from acting *sua sponte* to vacate and then reenter its prior order for the sole purpose of providing plaintiffs with additional time within which to file a notice of appeal. *See Lifeline Limited No. II v. Connecticut General Life Ins. Co.,* 821 F.Supp. 1213, 1214 n. 1 (E.D.Mich.1993). *Cf., Lewis v. Alexander,* 987 F.2d 392, 396 (6th Cir.1993) (noting limited scope of the *Jamrog* ruling). As the court noted in the *Lifeline* case,

> Plaintiff cites *Eaton v. Jamrog,* 984 F.2d 760 (6th Cir.1993), for the proposition that a district court does not have the power to reconsider *sua sponte* a final order. *Eaton,* however, does not stand for such a grand proposition. *Eaton* merely said that under Fed.R.Civ.P. 60(b), a district court does not have discretion to vacate and then reenter its earlier judgment for the sole purpose of providing plaintiffs with additional time in which to appeal. *Id.* at 762. My purpose in this Opinion and Order is to redetermine whether plaintiff's claims of tortious interference state claims upon which relief can be granted. I am not interested in providing plaintiffs with additional time in which to appeal.

821 F.Supp. at 1214 n. 1.[8] *See also In re McBride*, 203 B.R. 633, 636–7 (Bkrtcy. S.D.Ohio 1996) (bankruptcy court has authority to *sua sponte* reopen case pursuant to Fed. R. Civ. Pro. 60(b) and Fed. R. Bankr.P. 9024.)

Here, it was one of the parties itself, DIBCO, which first raised the issue of the dismissal order, although it did not formally contend that the case should not proceed. The parties here were expressly given notice by the Court on December 4, 2001 of the Court's intention to vacate the Order of Dismissal and the reasons for doing so. Thus, the order was called to the Court's attention by the parties and the Court believes it is under an obligation to clarify the docket of this much muddled, long-litigated case. Nor can the parties claim any prejudice, as they have clearly proceeded on the basis that the case has been reinstated to the court's docket and was at all times thereafter alive and well.

Therefore, even assuming that the June 30, 1987 Order of Dismissal was a "final" order such that it falls within the scope of Fed. R. Civ. Pro. 60(b), the Court finds that this case presents "extraordinary circumstances" which warrant relief from that Order pursuant to Fed. R. Civ. Pro.60(b)(6).[9]

8. The appellate court's concern in *Jamrog* was protecting its own jurisdiction. In that prisoner civil rights case, the district court had entered two orders, one dismissing four defendants, and second one granting summary judgment as to the remaining two defendants. The plaintiffs then filed a notice of appeal which the appellate court dismissed as premature because of the pendency in the district court of a motion for reconsideration. After the case was remanded, the district court *sua sponte* entered an order vacating its order of summary judgment and then re-entered it for the express purpose of giving the plaintiffs the opportunity to perfect a timely appeal as to both of the district court's dismissal/summary judgment orders. 984 F.2d at 761–2. The plaintiffs thereafter re-filed their appeal. *Id.* at 762. The appellate court subsequently issued an order to show cause why the appeal should not be dismissed for lack of jurisdiction. *Id.*

The Court of Appeals framed the issue before it as follows:

The threshold inquiry is whether the district court had discretion, under Fed. R. Civ. Pro. 60(b) to vacate and reenter its earlier judgment for the sole purpose of providing plaintiffs with additional time in which to appeal. If this court is without jurisdiction, we may not, of course, address plaintiffs' assignments of error.

984 F.2d at 762.

The court then went on to note that Fed. R.App. Pro. 4(a)(1) requires that a notice of appeal be filed within 30 days after the date of entry of judgment, and held as follows:

We have repeatedly held that compliance with Rule 4(a)(1) is a mandatory and jurisdictional prerequisite which this court may neither waive nor extend. So strictly has this rule been applied, that even a notice of appeal filed five minutes late has been deemed untimely. Furthermore, we are proscribed from extending the time for filing a notice of appeal by Rule 26(b), Fed. R.App. P., which states that "the [appellate] court may not enlarge the time for filing a notice of appeal...."

A district court may not vacate its earlier judgment to avoid the statutorily mandated manner in which an appellant must file a proper notice of appeal.

*Id.* (citations omitted).

9. To the extent that concern was raised at the December 4, 2001 pretrial conference as to whether the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391. S.Ct. 1673 (1994), divests this Court of jurisdiction to act in this case, the Court notes that this is not a *Kokkonen* case. The issue in *Kokkonen* was whether a district court had ancillary jurisdiction to enforce a settlement agreement entered into by the parties in a diversity jurisdiction case which had been settled.

Kokkonen was an agent for Guardian Life Insurance Company. After Guardian terminated the agency agreement between the parties, Kokkonen brought an action in California state court alleging only state-law claims. Guardian removed the case to the Federal District Court on diversity grounds and filed state-law counterclaims. The parties subse-

## C. *THE ORDER TO APPOINT USE OF A COMMISSION AND ORDER APPOINTING LAND COMMISSIONERS WILL ALSO BE VACATED*

As with the Order of Dismissal discussed in the preceding sections, the "Order to Appoint Use of a Commission" entered by the predecessor court on August 7, 1985 and the February 3, 1986 "Order Appointing Land Commissioners" were not brought to the Court's attention until December 4, 2001, the date on which a jury trial was scheduled to commence. The counsel for DIBCO who pointed out the existence of these orders stated that he had just discovered them the previous night, along with the dismissal order. Prior to that date, the Court and all parties involved in this action for the past 10 years have proceeded as if this case were going to be tried by a jury.

It appears from the record that the Court's predecessor raised the issue of possibly trying the case to a land commission during a telephone conference and asked the parties to brief the issue. [*See* Pleading Nos. 166, 168, 169.] Defendant DIBCO recommended the use of a land commission, *see* Pleading No. 166, while the Government opposed it. *See* Pleading No. 168.

Pursuant to Fed. R. Civ. Pro. 71A(h), in eminent domain actions, [A]ny party may have a trial by jury of the issue of just compensation by filing a demand therefor... unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it.

 The wording of the rule indicates that the usual mode of trial in condemnation proceedings will be to a jury or to the court, and that references to a commission should only be made in the discretion of the district court for good cause shown. *United States v. Vater*, 259 F.2d 667, 671 (2nd Cir.1958). A commission should only

---

quently arrived at a settlement agreement and executed a Stipulation and Order of Dismissal with Prejudice, which did not refer to the settlement agreement or reserve District Court jurisdiction to enforce it. After the District Judge signed the Stipulation and Order, a dispute arose as to Kokkonen's obligations under the settlement agreement. Guardian filed a motion to enforce the agreement, which Kokkonen opposed on the ground that the court lacked subject-matter jurisdiction. The District Court entered an enforcement order, asserting that it had "inherent power" to do so. The Court of Appeals agreed and affirmed.

The Supreme Court reversed finding that the doctrine of ancillary jurisdiction did not apply to provide the District Court with jurisdiction over the settlement agreement because the facts to be determined with regard to the alleged breach of settlement agreement were quite separate from the facts involved in the principal suit and there was no independent basis for federal court jurisdiction to

bring an entirely new state-law dispute before the court.

Here, we are not dealing with an action to enforce a settlement agreement. As discussed above, the parties in this action are not even in agreement whether the settlement agreement (the "MOA") is still operative. Indeed, the Court's action today is merely to place this case in active status in conformity with the parties' conduct for the past decade. In any event, *Kokkonen* dealt only with the scope of the district court's *ancillary jurisdiction* to enforce a settlement agreement over which it had no other independent federal subject matter jurisdiction. Here, one of the parties to the MOA is the United States. Therefore, even if this were an action to enforce a settlement agreement, this Court would have independent federal jurisdiction over the matter pursuant to 28 U.S.C. §§ 1345 and 1346 which endow the federal district courts with original jurisdiction over civil actions by or against the United States.

be used instead of a jury trial only in exceptional cases. *United States v. 320.0 Acres of Land,* 605 F.2d 762, 827 (5th Cir.1979); *United States v. 2,187.43 Acres of Land,* 461 F.2d 938, 940 (8th Cir.1972); *United States v. Theimer,* 199 F.2d 501, 503 (10th Cir.1952); *United States v. 5,677.94 Acres of Land,* 162 F.Supp. 108 (D.Mont.1958); *United States v. Fairfield Gardens,* 21 F.R.D. 370 (N.D.Cal.1958).

As the court explained in *United States v. Buhler,* 254 F.2d 876, 880 (5th Cir.1958), "To justify denial of a timely demand for jury trial, it is essential that the exercise of the court's discretion be based upon some exceptional reasons in the interest of justice, such as the character, location, or quantity of the property to be condemned." Thus, courts have held that only if the subject property is a long distance from the courthouse or numerous individually-owned parcels of land are involved will extraordinary circumstances justifying appointment of a land commission be found. *See, e.g., United States v. 320 Acres of Land, supra.* In a normal condemnation action, where only one or two parcels of land and one or two landowners are involved, appointing a commission may constitute an abuse of discretion. *See, United States v. Theimer, supra; United States v. Fairfield Gardens, supra.*

The Court's predecessor ordered this case tried by a land commission because this case at the time involved three parcels of commercial property owned by two different landowners and the "valuation of commercial property... is a highly complex issue." [*See* 8/7/85 Order, p. 2.] Although this Court acknowledges the broad discretion vested in the district court to order a condemnation case tried by a land commission, it doubts whether, if challenged, the fact that valuation of commercial property is involved is sufficient to justify exercise of that discretion.

 In any event, as discussed above, the district court has inherent power to modify, vacate or set aside interlocutory orders when the interests of justice require. *See* Fed. R. Civ. Pro. 54(b) (an order of the district court is subject to revision at any time before entry of judgment adjudicating all claims of all parties). *See also, Rottmund v. Continental Assurance Co.,* 813 F.Supp. 1104, 1107 (E.D.Pa. 1992); *Primary Carenet of Texas v. Scott,* 2001 WL 681690 (W.D.Tex.2001). The Court finds that in this case, in the interests of justice, the Order to Appoint Use of A Commission and Order Appointing Commissioners must be vacated.

The parties have proceeded for the past 10 years as if this case were going to be tried to a jury. On December 4, 2001, the Court specifically inquired of the parties whether they were willing to forego their right to a trial by jury. Although DIBCO waived its right to a jury trial, the Government refused to give up that right.[10] Furthermore, the Court believes that this case can, at this stage, most expediently be tried by a jury rather than a three-person commission. No scheduling difficulties will be encountered with a jury and given that this case is already 22 years old, the Court believes the parties are entitled to the speediest resolution possible. Indeed, it is not uncommon for scheduling problems with commissioners to arise which delay trial for months, even years. *See* cases cited in the Government's Memorandum Regarding Use of a Commission, Pleading No. 168. Where scheduling

---

**10.** The Court notes that the record reflects that the Government waived its right to trial by jury with respect to the Sogoian parcel which, at the time, was set to be tried by a commission separately from the DIBCO parcels. *See* Docket entry No. 194. No such waiver was ever made as to the DIBCO parcels.

problems with commissioners have been found to unduly delay proceedings, it is within the district court's powers to withdraw the case from the commission. *See United States v. Vater, supra.*

Therefore, pursuant to its authority under Fed. R. Civ. Pro. 54(b), the Court will vacate the Orders appointing a land commission.

## CONCLUSION

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that the June 30, 1987 "Order of Dismissal" [Doc. No. 190], dismissing this case as to the Detroit International Bridge Company is vacated.[11]

IT IS FURTHER ORDERED that the August 7, 1985 "Order to Appoint Use of a Commission" [Doc. No. 173] and February 3, 1986 "Order Appointing Land Commissioners" [Doc. No. 177] are vacated. This case, accordingly, will proceed to trial by a jury on February 5, 2002 on the issue of the just compensation due to DIBCO for its two parcels of property taken by the Government.

---

**11.** This Order does not affect the Court's September 14, 1987 Order vacating the June 30, 1987 Order of Dismissal as to Defendant Nash P. Sogoian [Pleading No. 195]. After the Order of Dismissal was vacated as to Mr. Sogoian, a Stipulated Judgment was entered on the Sogoian parcel on September 17, 1987 and the monetary judgment on that parcel was paid to Mr. Sogoian on December 22, 1987.